THE COMMITTEE ON LEGAL ETHICS OF

THE WEST VIRGINIA STATE BAR

*v.*

THOMAS MULLINS

(No. 13702)

Decided June 29, 1976.

*David A. Faber, Love, Wise, Robinson & Woodroe,* for complainant.

*Thomas Mullins,* pro se.

WILSON, JUSTICE:

The committee on legal ethics of The West Virginia State Bar has recommended that this Court suspend the license of Thomas Mullins to practice law for a period of one year for conduct constituting a breach of certain provisions of the Code of Professional Responsibility and for failing to cooperate with the ethics committee in its efforts to discharge its responsibilities.

These proceedings were initiated upon the complaint of John Curry who asserted that he employed Mullins in December, 1971, to represent him and his wife in connection with claims arising out of an automobile accident which occurred on October 3, 1971, in Fayette County. Apparently in the belief that Mullins had failed to act in a responsible manner in the diligent protection of his interests and had misled him to his detriment, Curry is said to have written a letter of complaint to Forest J. Bowman, then Executive Director of The West Virginia State Bar. This letter is not made a part of the record.

By letters dated November 26, 1974, January 14, 1975, and February 13, 1975, Bowman's office informed Mullins of the complaint and requested information either by letter or telephone with reference thereto. Mullins did not reply.

On March 20, 1975, Curry executed an affidavit which was filed as an exhibit in the later proceedings against Mullins.

Apparently, this affidavit is the "complaint" referred to in the letters written to Mullins by John O. Kizer, chairman, committee on legal ethics, on April 9, 1975, and June 13, 1975, neither of which were acknowledged or replied to by Mullins and both of which were subsequently made exhibits in the proceedings against him.

On November 3, 1975, there was served on Mullins in person a notice of a hearing to be held in Charleston by a subcommittee of the ethics committee. This notice advised Mullins of the complaint made by Curry, and charged Mullins with violations of DR 6-101 (A)(2) and (3) and DR 7-101 (A)(2) and (3) of the Code of Professional Responsibility in the following particulars: failing to take action to advance the Currys' claim; permitting an applicable statute of limitations to run; failing to respond to letters of inquiry from the office of the Executive Secretary of The West Virginia State Bar; and failing to respond to the letters from the chairman of the committee on legal ethics of The West Virginia State Bar.

No formal hearing having been requested by Mullins under the provisions of Article VI, Part C, Section 13 of the By-Laws of The West Virginia State Bar, a hearing was conducted on December 4, 1975, pursuant to the provisions of Article VI, Part B, Section 12 of said By-Laws.

At said hearing, the exhibits filed and made a part of the record were: the notice of the hearing; the verified complaint of John Curry; and the letters of April 9, 1975, and June 13, 1975, addressed to Mullins by the chairman of the committee on legal ethics.

Mr. and Mrs. John Curry appeared as witnesses under oath, and their testimony was taken and transcribed. Mullins did not appear, and no evidence was presented on his behalf.

Subsequently, the committee on legal ethics reported its findings and recommendations and an itemized listing of expenses in the sum of $86.85 to Mullins and to

the President and Secretary of The West Virginia State Bar. It then instituted these proceedings under the authority of Article VI, Part D of the By-Laws of The West Virginia State Bar.

The findings of the committee, in summary form, were as follows: that Mullins had been duly licensed and admitted to practice law in the State of West Virginia since July 9, 1956, and had been a member of The West Virginia State Bar since September 2, 1956; that the Currys had been seriously injured in an automobile accident on October 3, 1971; that in the latter part of December, 1971, they had employed Mullins to collect damages; that after obtaining a copy of the accident report from the Department of Motor Vehicles and after obtaining a letter from an insurance company denying coverage for the alleged tort-feasor, Mullins did nothing with regard to the Currys' claim even though, on the numerous occasions when the Currys sought reports from him, he assured them that he was working on the case and would have something to report soon; that he showed a disregard of a two-year statute of limitations; that he lost or destroyed and failed to return certain insurance papers which the Currys had turned over to him; that he neglected to pursue the possibility of asserting a claim under the uninsured motorist provision of the Currys' insurance policy; that he neglected to make any effort to determine whether assets were available from the estate of the decedent tort-feasor; that he failed to respond to all communications from the office of the Executive Director of The West Virginia State Bar and the chairman of the committee on legal ethics; and that he failed to appear, answer or otherwise respond to the charges made against him.

From these findings of fact which Mullins later admitted in an affidavit filed with this Court on April 27, 1976, the committee concluded that Mullins was guilty of professional misconduct in the following respects: failing to perform the services for which he had been employed; neglecting the claim of the Currys by permitting a stat-

ute of limitations to run; misleading his clients as to his activities and as to applicable principles of law; and being uncooperative with the legal ethics committee.

The rationale of disciplinary proceedings is that standards of professional ethics and conduct are of the highest importance to the State, its people and the members of the legal profession and that all members of the profession have a duty to actively uphold those standards. *See* Article VI, Section 1, By-Laws of The West Virginia State Bar.

Under the provisions of Article VI, Part A, Section 4 of the By-Laws of The West Virginia State Bar, the committee on legal ethics has jurisdiction to make investigations, to the extent deemed necessary, of complaints regarding legal ethics, unprofessional conduct, malpractice and professional standards.

The ethics committee has customarily exercised its functions with great care and circumspection, and with keen awareness that when it recommends either suspension or disbarment it is suggesting that an individual be deprived of his method of earning a livelihood in a profession for which he has been extensively trained and to which in many instances he has devoted many years of his life. Consequently, mindful of the fact that the primary purpose of the ethics committee is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys, the ethics committee has traditionally made an obvious effort to weigh, in a thorough and prudent manner, the seriousness and circumstances of the offenses charged against the attorney.

In this case, the relevant findings support the conclusions of the ethics committee that Mullins failed to perform the services for which he had been employed and that he misled his clients as to his activities in their behalf. The facts upon which these conclusions were based were later admitted by Mullins and constitute a clear violation of the standards of professional responsi-

bility which clients have a right reasonably to expect from those whom they employ as counsel. The ethics committee has proved these charges by full, preponderating and clear evidence. *See, In Re: Hendricks*, 155 W. Va. 516, 185 S.E.2d 336 (1971); and *The Committee on Legal Ethics of The West Virginia State Bar v. Pietranton*, 143 W. Va. 11, 99 S.E.2d 15 (1957).

It has failed so to establish the other charges and has failed to demonstrate the propriety of the discipline which it recommends.

This Court has refused to establish a uniform standard of disciplinary action and has stated that it will consider the facts and circumstances in each particular case in determining whether suspension or disbarment is indicated. *See In Re: Hendricks, supra.* This approach to disciplinary problems imposes grave responsibilities upon the ethics committee to advise this Court of all circumstances bearing upon the particular case. It should be prepared to represent to this Court that all pertinent facts not only with reference to the charges but also with reference to recommended disciplinary action have been adequately investigated and fully reported to this Court.

We are critical of the ethics committee's handling of this case in three particulars: (1) Its inattention to mitigating circumstances; (2) its haste in making a finding which charges actionable negligence; and (3) its determination that Mullins' lack of cooperation with the ethics committee should be interjected as a charge against Mullins.

Factors which had a material bearing on the seriousness of the alleged offenses by Mullins and on the propriety of the type of disciplinary action which this Court should take were neither adequately investigated nor fully reported to this Court.

At the time of argument, this Court learned for the first time that Mullins, at some time during the period in question, had been undergoing serious tribulations in

his personal life with emotional consequences of grave concern. These are matters which are properly to be shown in mitigation of discipline.[1] *See, Committee on Legal Ethics of State Bar v. Smith,* 156 W. Va. 471, 194 S.E.2d 665 (1973); *In re Stromberg,* 75 Wash.2d 955, 452 P.2d 547 (1969); and *In Re Higgins,* 27 App.Div.2d 340, 279 N.Y.S.2d 197 (1967).

Mitigating circumstances are particularly important in connection with a case such as this which is founded on prolonged inattention to a client's affairs.

Misconduct or malpractice consisting of negligence or inattention, in order to justify suspension or annulment, must be such as to show the attorney to be unworthy of public confidence and an unfit or unsafe person to be entrusted with the duties of a member of the legal profession or to exercise its privileges. Syllabus No. 1, *In re: Damron,* 131 W. Va. 66, 45 S.E.2d 741 (1947). Charges of isolated errors of judgment or malpractice in the ordinary sense of negligence would normally not justify the intervention of the ethics committee.

In this era of a proliferation of claims against members of all professions, commonly called "malpractice claims" but founded in reality upon the traditional concept of ordinary negligence, it would be dangerous and unwarranted for the ethics committee to endeavor to determine legal liability arising from possible causes of action whose merits can be more accurately, properly and finally determined by formal legal procedures designed for the assessment of legal liability. We would not presume to resolve matters of substantive liability in a collateral proceeding involving discipline.

When, however, demonstrated substantive errors rise to the level of showing the attorney to be unworthy of public confidence and an unfit or unsafe person to be entrusted with the duties of a member of the legal pro-

---

[1]For an illuminating discussion of mitigation in certain types of circumstances and the importance thereof in disciplinary proceedings, *See* 69 W. Va. L. Rev. 341 (1967).

fession or to exercise its privileges, then the ethics committee has a role to play. It is not, however, a substitute for a court of law in the trial of negligence actions. It has neither the power nor the means to make it a reliable determinant of such matters.

In this case, the ethics committee should not have been assessing the substantive merits of a possible cause of action on behalf of the Currys against Mullins. It should have been concerned only with a course of conduct which fell short of that degree of reasonable diligence which clients may reasonably expect from members of the profession and which served to mislead the clients as to what was being done by the attorney to whom they had entrusted their affairs.

The ethics committee expressed concern and displeasure with the total lack of cooperation extended to it by Mullins. The ethics committee was apparently so disturbed by the failure of Mullins to cooperate that it, in substance, initiated its own complaint against him for such lack of cooperation.

An attorney has an absolute right so to react to charges against him as to be considered uncooperative. He may make defense or refuse to make defense. He may employ counsel or refuse to employ counsel. He may testify or refuse to testify. His attitude toward the ethics committee is undertaken at his peril, and indeed it may compel the ethics committee to accept as true all allegations of fact upon which a complaint is based. However, the attorney's refusal to cooperate with the ethics committee cannot be used by the ethics committee as an independent assignment of cause for discipline. There are cases in other jurisdictions which intimate a contrary view. *e.g., See, In re Stromberg, supra; In Re Higgins, supra;* and *In Re Edelman,* 16 App.Div.2d 521, 229 N.Y.S.2d 844 (1962). However, such views are not in accord with the fundamental rights of one who finds himself in a position of having to protect himself against charges brought against him. He may do that in a manner which may seem to him to be proper, and his man-

ner of doing so cannot be used as an independent basis for discipline.

Instead of manifesting displeasure and taking offense, the ethics committee would have been well-advised to search for a reason for Mullins' unusual conduct. Had it done so, it would again have found the personal and emotional problems which were rather readily and more fully revealed at the time of argument in this case before this Court.

It is particularly distressing that the ethics committee neglected this avenue of investigation and as a consequence made a disciplinary recommendation to this Court which would not serve the public, the profession, the client or Mullins. The mitigating factors here present might have served to explain Mullins' entire course of conduct. If they did, the recommendation of the ethics committee to suspend Mullins from the practice of law for a period of one year, if adopted without question by this Court, would have resulted in the reinstatement of Mullins without attention to the very factors which may have been productive of the conduct which the ethics committee found reprehensible.

Because of the suggestion that mitigating personal factors, not properly either investigated or evaluated by the ethics committee, may have caused the conduct of which the ethics committee complains, it is our decision that Mullins should be suspended indefinitely with the right, however, to petition the Court at any time for reinstatement in accordance with the provisions of Article VI, Part F, Sections 27 and 28 of the By-Laws of The West Virginia State Bar, upon a satisfactory showing that his personal or emotional problems have been so satisfactorily resolved as to make it probable that he once again merits the confidence of the public and has a capacity to conform his professional conduct to the high standards expected of members of this privileged profession. Upon the filing of any such petition, it is expected that The West Virginia State Bar, through its committee

on legal ethics, will properly process it without undue delay.

For the reasons expressed in this opinion, the license of Thomas Mullins to practice law in this State is suspended indefinitely; he shall bear the costs of these proceedings; and he shall have the right at any time to petition for reinstatement as provided in this opinion.

*License suspended indefinitely.*

BERRY, CHIEF JUSTICE, *dissenting*:

Because I disagree strongly with two central points in the majority opinion, I dissent from the disposition of this disciplinary proceeding.

There is no question, and the majority acknowledges, that the respondent, Thomas Mullins, was guilty of professional misconduct. He clearly neglected legal matters entrusted to him in violation of Canon 6 of the Code of Professional Responsibility, DR 6-101 (A)(3). By allowing the statute of limitations to run and bar his client's personal injury action, without justification and with repeated entreaties by his client that he take action, the respondent was guilty of negligent professional malpractice and suspension, annulment, or other appropriate sanction is mandated. *See,* Article VI, §25 of the By-Laws of The West Virginia State Bar.

The sanction applied by the majority—an indefinite suspension with the right of immediate reinstatement— is based upon the conclusion that the respondent was suffering from debilitating emotional problems during the period of the challenged misconduct. The fact that an attorney suffered illness or emotional disturbance cannot excuse a prolonged failure to attend to his client's business. *Committee on Legal Ethics v. Smith,* W. Va., 194 S.E.2d 665 (1973). Mental incapacity or disability is no defense in a disciplinary action because the object of such a proceeding is to protect the public and the prospective clients of the attorney rather than to impose punishment. *See, Comment,* 69 W. Va. L. Rev. 341

(1967). Factors bearing on the physical and emotional health of an attorney may be considered in mitigation of any sanction to be applied as a result of disciplinary proceedings. *Committee on Legal Ethics v. Smith, supra.*

The majority's deference to the foregoing principles belies the fact that there is absolutely no evidence in the record before this Court upon which the rules can be applied. The record is totally silent with regard to the presence or absence of debilitating emotional problems on the part of the respondent.

In his appearance before this Court in response to the petition of the Legal Ethics Committee, the respondent exhibited an apparent attitude of deep resignation. In response to questioning by members of the Court during this appearance, Mullins reluctantly acquiesced in a characterization of his emotional condition as depression. Based on this exchange, the majority has concluded as a matter of fact that Mullins "had been undergoing serious tribulations in his personal life with emotional consequences of grave concern." I reject this finding and our ability to make it. We are neither psychiatrists nor seers, but judges. Regardless of the degree to which we, as men, trust our intuitive senses in our personal affairs, we are bound to reject speculation and conjecture in our role as adjudicators. In my opinion, the proper disposition of this case would have been to remand it to the Legal Ethics Committee for further investigation of the emotional condition of the respondent at the time of the misconduct and the subsequent investigation. Instead, the majority has chosen to denounce the Legal Ethics Committee for its "inattention to mitigating circumstances," circumstances which were not brought to the attention of the Committee during its investigation because of the respondent's total failure to cooperate. I believe the criticism to be unwarranted and the remedy applied to be inappropriate.

The second point of disagreement which I have with the majority opinion centers around its holding that an attorney who is the object of a disciplinary inquiry has

an "absolute right" to refuse to cooperate in any way with the State Bar or its Ethics Committee. As the majority has acknowledged, this holding is directly contrary to the position taken in other jurisdictions. In view of the high duty of the profession, every lawyer has the obligation, in the absence of the assertion of the Fifth Amendment right against self-incrimination, *Sternberg v. State Bar of Michigan*, 384 Mich. 588, 185 N.W.2d 395 (1971), to provide all information relevant to an inquiry of his professional conduct. In addition to the cases cited in the majority opinion, *see, Matter of Andrews*, 378 N.Y.S.2d 408 (App. Div. 1976); *In Re Birrell*, 215 N.Y.S.2d 293 (App. Div. 1961); *In Re Cohen*, 7 N.Y.2d 488, 199 N.Y.S.2d 658 (1960); *In Re Young*, 316 S.W.2d 855 (Ky. 1958).

I fear that the majority decision gives license to professional misconduct in violation of the rules of this Court, the Constitution and By-Laws of the West Virginia State Bar and the Canons of Professional Responsibility in several respects. First, inasmuch as the West Virginia State Bar is an agency of this Court, Art. I, *Constitution of the West Virginia State Bar,* contumacious conduct directed towards that body is tantamount to contempt of this Court. Further, members of the legal profession have a mandatory duty to uphold the standards of conduct applicable to the profession and to "act diligently and vigilantly in the investigation and prosecution of violation of those standards." Art. VI, §1, *By-Laws of the W. Va. State Bar. See also* Art. VI, §9, *By-Laws of the W. Va. State Bar,* and Canon 1, DR 1-103, Code of Professional Responsibility.

Disciplinary Rule 1-102 of Canon 1 of the Code of Professional Responsibility specifically provides:

"A lawyer shall not"

. . .

(5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other

conduct that adversely reflects on his fitness to practice law."

I firmly believe that an attorney who deliberately and wilfully disregards the legitimate inquiries of the Ethics Committee acts in violation of the quoted disciplinary rule.

Finally, it is my opinion that an attorney acts in flagrant disregard for his ethical responsibility to avoid the appearance of professional impropriety when he chooses to ignore or dismiss as troublesome or unworthy of his attention, the proper processes of the agency established by this Court to regulate the legal profession.

As I have noted above, any emotional condition of the respondent in this case could be considered as a factor in mitigation of his refusal to cooperate with the Ethics Committee. This consideration lends even greater support to what I believe to be the proper disposition of this case, a remand for further development of the probative facts relating to the respondent's emotional condition.