· 540 S.E.2d 156

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**John E. ARTIMEZ, A Member of the West Virginia State Bar, Respondent.**

No. 25804.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Oct. 27, 2000.

---

Morgan Palmer Griffith, Amie L. Johnson, Lawyer Disciplinary Counsel, Charleston, West Virginia, Attorneys for the Complainant.

Robert P. Fitzsimmons, Russell J. Guthrie, Fitzsimmons Law Offices, Wheeling, West Virginia, Attorneys for the Respondent.

DAVIS, Justice:

This lawyer disciplinary proceeding arises from the respondent's, John E. Artimez's [hereinafter "Mr. Artimez"], intimate sexual relationship with his client's wife [hereinafter "Mrs. Crook"] and Mr. Artimez's attempt to settle his client's [hereinafter "Mr. Crook"] resulting claims of malpractice and professional ethics violations. Despite the purported settlement, Mr. Crook reported Mr. Artimez's conduct to the West Virginia Lawyer Disciplinary Board [hereinafter "the Board"]. In turn, the Board investigated Mr. Crook's claims and filed a statement of charges alleging, *inter alia*, that Mr. Artimez had violated Rules 1.7(b)[1] and 8.4(d)[2] of the West Virginia Rules of Professional Conduct.[3] Thereaf-

---

1. Simply stated, W. Va. Rules of Professional Conduct Rule 1.7(b) prohibits a lawyer from representing a client where there exists a conflict of interest unless certain precautions have been taken. For the full text of this rule, see *infra* Section I.

2. In summary, W. Va. Rules of Professional Conduct Rule 8.4(d) precludes an attorney from hampering the administration of justice. The full text of this rule is set forth in Section I., *infra*.

3. The Board also filed an additional charge against Mr. Artimez which is discussed in footnote 10, *infra*.

ter, Mr. Artimez and the Board presented agreed findings of fact and conclusions of law to the Board's Hearing Panel Subcommittee [hereinafter "Panel"]. Adopting these facts and legal conclusions, the Panel recommended, in accordance with the parties' stipulation as to discipline, that Mr. Artimez be publicly reprimanded and that he be charged with the cost of this disciplinary proceeding. Upon a review of the Panel's recommended decision, the parties' briefs, and the pertinent authorities, we adopt the lower tribunal's recommendation and hereby publicly reprimand attorney Artimez. We further agree that Mr. Artimez be held responsible for the costs of this proceeding.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The events giving rise to the instant lawyer disciplinary proceeding began in 1995. On May 3, 1995, the complainant, Frank Crook, and his then-girlfriend, Dana Yoho, were involved in an automobile accident.[4] Shortly thereafter, Mr. Crook and Ms. Yoho married. In November, 1995, Mr. and Mrs. Crook consulted with the respondent herein, attorney Artimez, with respect to the injuries Mr. Crook had sustained in the May accident.[5] At that time, Mr. Artimez practiced in a partnership with attorney Gregory A. Gellner [hereinafter "Mr. Gellner"]. Mr. Artimez worked primarily in the partnership's Moundsville, West Virginia, office, while Mr. Gellner staffed its office in Wheeling, West Virginia.

During his representation of Mr. Crook,[6] Mr. Artimez communicated with the various

---

4. Ms. Yoho was driving the vehicle which she and Mr. Crook occupied.

5. The precise nature of Mr. Crook's injuries is not apparent from the record before the Court.

6. Although Mr. Artimez did not have a formal attorney-client relationship with Mrs. Crook, he did conduct minimal correspondence on her behalf to facilitate the settlement of her accident claim with the other driver's insurance company. For these efforts, however, Mr. Artimez neither charged nor received a fee.

involved insurance companies and attempted to settle Mr. Crook's personal injury claim.[7] Negotiations having failed to produce the desired settlement, Mr. Artimez filed a civil action on Mr. Crook's behalf on May 2, 1997, in the Circuit Court of Marshall County. In the course of these proceedings, a third-party action was instituted by the other driver against Mrs. Crook and her insurance company because she had been driving the vehicle occupied by Mr. Crook at the time of the accident. Neither Mr. Artimez nor Mr. Gellner represented Mrs. Crook, however, as representation was provided by her insurance company.

At about the same time as the preparation and filing of Mr. Crook's lawsuit, Mr. Artimez and Mrs. Crook commenced a sexual relationship. In July, 1997, Mr. and Mrs. Crook separated, and Mrs. Crook began residing in an apartment near Mr. Artimez's law office. Also at this approximate time, Mr. Artimez asked Mr. Crook if he could transfer Mr. Crook's lawsuit to his partner, Mr. Gellner. The reason he gave to both Mr. Crook and Mr. Gellner for the file transfer was his heavy workload, which involved several trials in the immediate future. Another personal basis for his decision, which was not communicated to either Mr. Crook or Mr. Gellner, was his rising discomfort with his representation of Mr. Crook while he was intimately involved with Mrs. Crook. Additionally during this time, Mr. Gellner inquired of Mr. Artimez whether he and Mrs. Crook were having an affair. Mr. Artimez, however, denied any such relationship.

In October, 1997, Mr. Crook discovered that Mr. Artimez and Mrs. Crook were romantically involved. On October 20, 1997, Mr. Crook met with Mr. Gellner and disclosed the relationship to him. At that time, Mr. Gellner presented Mr. Crook with various options: (1) Mr. Crook could obtain new counsel; (2) Mr. Crook could continue to be represented by Mr. Gellner, and his legal fees would be reduced by 50% (Mr. Artimez's share); [8] or (3) Mr. Crook could consult with new counsel about the prospects of settling his personal injury lawsuit and/or pursuing the above-described proposals, and the partnership would pay his associated consultation fees. Following these discussions, Mr. Crook elected to continue to retain Mr. Gellner as his attorney for a reduced fee.

Mr. Crook then threatened to sue Mr. Artimez for professional malpractice and to file ethics charges against him. Through Mrs. Crook, Mr. Artimez communicated his desire to settle Mr. Crook's claims against him. Mr. Crook contacted Mr. Artimez regarding the proposed settlement, and Mr. Artimez offered to pay him $5,000. Thereafter, Mr. Crook responded with a counteroffer, to which Mr. Artimez agreed: (1) Mr. Artimez would pay Mr. Crook $12,000; (2) all legal fees Mr. Crook had incurred with respect to his personal injury lawsuit, which was then being handled by Mr. Gellner, would be waived; (3) Mr. Artimez would voluntarily appear and testify in, or otherwise cooperate with, prospective Ohio divorce proceedings between Mr. and Mrs. Crook; [9] and (4) Mr. Crook would release Mr. Artimez from any professional or civil liability, including agreeing not to file a cause of action against Mr. Artimez for professional malpractice, report his conduct to the West Virginia Lawyer Disciplinary Board, or do anything else that would jeopardize Mr. Artimez's law license. Both Mr. Crook and Mr. Artimez signed a settlement and release reflecting these terms in November, 1997, and December, 1997, respectively.

Ultimately, Mr. and Mrs. Crook separated again. At that time, Mr. Crook reported Mr. Artimez's conduct to the West Virginia Lawyer Disciplinary Board's Office of Disciplinary Counsel. The Board's Investigative Pan-

---

7. As Mr. and Mrs. Crook were not married to each other at the time of the automobile accident, Mrs. Crook could not assert a claim for loss of consortium resulting from Mr. Crook's injuries.

8. This fee reduction was designed to preclude Mr. Artimez from receiving any fees as a result of his prior representation of Mr. Crook.

9. Because the Crooks lived in Ohio, and any divorce proceedings between them would likewise be conducted in Ohio, Mr. Artimez, who lived and worked in West Virginia, would have been outside of the subpoena jurisdiction of the presiding Ohio court.

el then issued a formal Statement of Charges, on January 15, 1999, charging Mr. Artimez as follows:

■ By initiating a sexual relationship with a client's wife, Respondent [Mr. Artimez] created an impermissible conflict between his own interests and those of his client, in violation of Rule 1.7(b) of the Rules of Professional Conduct, which provides:

**Rule 1.7. Conflict of Interest: General rules.**

(b) A lawyer shall not represent a client if the representation of that client may be materially be [sic] limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably [believes] the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

See, e.g., *People v. Bauder*, 941 P.2d 282 (Colo.1997) [ (en banc) (per curiam) ] (attorney propositioned client's wife and client's girlfriend).

■ By paying his client, in part, not to take any action which would result in a disciplinary complaint against Respondent, Respondent violated Rule 8.4(d) of the Rules of Professional Conduct, which provides:

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(d) engage in conduct that is prejudicial to the administration of justice.

This conduct is comparable to the conduct prohibited by Legal Ethics Inquiry 88–03, "Settlement Agreements Requiring Complainants to Withdraw Ethics Complaint".

■ By lying to his partner about the relationship with the wife of the firm's client, Respondent frustrated his partner's efforts to comply with Rule 5.1(a) of the Rules of Professional Conduct, which provides:

**Rule 5.1. Responsibilities of a partner or supervisory lawyer.**

(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

Under the circumstances, Respondent violated Rule 8.4(c) of the Rules of Professional Conduct, which provides:

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Following Mr. Artimez's response to the statement of charges, the parties, on July 6, 1999, jointly submitted agreed findings of fact and conclusions of law. In their stipulation, Mr. Artimez and the Office of Disciplinary Counsel recounted that Mr. Artimez had cooperated fully with the investigation of the charges, that he had met with the Chief Disciplinary Counsel, and that he had voluntarily provided a detailed statement of the events giving rise to such charges. Mr. Artimez also admitted that his sexual relationship with Mrs. Crook constituted a conflict of interest between his interests and those of his client, Mr. Crook, in violation of Rule 1.7(b) of the West Virginia Rules of Professional Conduct. Ultimately, the parties concluded that "Respondent's [Mr. Artimez's] written agreement to pay money to complainant [Mr. Crook], which agreement contained complainant's promise not to take any action which might lead to a disciplinary action, violated Rule 8.4(d) of the Rules of Professional Conduct[.]" Additionally,

[t]he parties have agreed to omit a conclusion of law that Respondent violated Rule 1.7(b) of the Rules of Professional Conduct by having a relationship with Mr. Crook's wife because this issue was one of first impression with the Investigative Panel. Since Dana Crook was not Respondent's client, the clear prohibition of Rule 8.4(g) of the Rules of Professional Conduct did not apply. Mr. Artimez believed in good faith at the time that if the quality of his representation of Mr. Crook was unaffected, he was not in violation of Rule 1.7(b).

The parties ultimately recommended that Mr. Artimez be disciplined as follows:

> Respondent should receive a public reprimand, together with the payment of any costs incurred in the investigation and hearing of this matter.

> The parties considered the following to be evidence of mitigating factors supporting the recommendation of a public reprimand:

> (a) Respondent has had no prior discipline; and

> (b) Respondent accepts responsibility for his conduct and has been fully cooperative during the investigation of this matter.

Thereafter, on February 24, 2000, the Lawyer Disciplinary Board's Hearing Panel Subcommittee reviewed and adopted the parties' stipulation as its recommended decision to this Court.

## II.

## STANDARD OF REVIEW

In lawyer disciplinary proceedings, this Court accords a plenary review to the recommended decision of the Lawyer Disciplinary Board's Hearing Panel Subcommittee:

> [a] *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics of The West Virginia State Bar v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). Nevertheless, "[a]bsent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee . . . are to be given substantial consideration." Syl. pt. 3, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980).

Related to this Court's *de novo* review of recommended decisions is its coordinate responsibility for determining the ultimate resolution of lawyer disciplinary proceedings. In other words, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of The West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). Also inherent in determining each proceeding's final outcome is the Court's duty to mete out appropriate discipline for the subject transgression(s).

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics of The West Virginia State Bar v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987). To ascertain the precise nature of the punishment warranted in a particular case, the Court is guided by a list of considerations supplied by the rules governing lawyer discipline.

> In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

W. Va. Rules of Lawyer Disciplinary Procedure Rule 3.16.

Being mindful of these standards, we now proceed to consider the Panel's recommended decision and the parties' contentions.

## III.

## DISCUSSION

■ At issue in the subject disciplinary proceeding are the charges against attorney Artimez alleging that he had an inappropriate sexual relationship with his client's wife and that he improperly settled his client's claims of professional misconduct arising from this affair.[10] We will first address the charge for which the Board has recommended disciplinary action, *i.e.*, the contractual claim, and then consider the second charge relating to the relationship between Mr. Artimez and Mrs. Crook.

10. During the course of its investigation, the Board additionally charged attorney Artimez with violating W. Va. Rules of Professional Conduct Rule 8.4(c), which prohibits conduct involving "dishonesty, fraud, deceit or misrepresentation." This charge resulted from Mr. Artimez's initial concealment of his relationship with Mrs. Crook from his law partner, Mr. Gellner. However, in both the parties' agreed statement of law and fact and the Panel's final recommended decision to this Court, this particular charge is not discussed. While we may consider disciplinary charges for which no discipline has been recommended, we decline to do so in this instance. *See* Syl. pt. 9, *Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 505 S.E.2d 619 (1998) (" 'This Court may in appropriate circumstances exercise its inherent supervisory power to review attorney disciplinary charges for which the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] has not recommended discipline.' Syl. Pt. 3, *Committee on Legal Ethics of [The] West Virginia State Bar v. Douglas*, 179 W.Va. 490, 370 S.E.2d 325 (1988)[, *superseded by rule on other grounds as stated in Lawyer Disciplinary Bd. v. Neely*, 207 W.Va. 21, 528 S.E.2d 468 (1998) (per curiam) ].' "). Simply stated, the information which Mr. Artimez was charged with concealing concerns a matter which we have concluded does not constitute an ethical violation *per se*. *See infra* Section III.B. As Mr. Artimez's sexual relationship with Mrs. Crook, as inappropriate as it may have been, was not technically prohibited by the Rules of Professional Conduct, we are hard-pressed to find that his failure to be forthcoming with his law partner about this matter violated Rule 8.4(c).

11. As this charge concerns Mr. Artimez's dealings with Mr. Crook after Mr. Artimez had transferred Mr. Crook's client file to Mr. Gellner, we refer to Mr. Crook as Mr. Artimez's *former* client.

### A. Lawyer's Contractual Agreement with Former[11] Client to Settle Claims of Professional Misconduct (W. Va. Rules of Professional Conduct Rule 8.4(d))

The first instance of misconduct with which Mr. Artimez has been charged, and the only one for which the Lawyer Disciplinary Board has recommended a sanction, resulted from Mr. Artimez's contract with Mr. Crook. By the terms of this settlement, Mr. Artimez assented to pay Mr. Crook money in exchange for Mr. Crook's agreement to release Mr. Artimez from all civil and professional liability resulting from his sexual relationship with Mrs. Crook.[12] For this transgression, which was determined to be a violation of Rule 8.4(d) as being prejudicial to the administration of justice,[13] the Lawyer

12. The pertinent portion of the settlement agreement provides:

Crook covenants and represents that he shall take no action of any sort which is intended, or can be reasonably anticipated to result in any disciplinary action against Artimez or Gregory A. Gellner by the West Virginia State Bar Association, the West Virginia Supreme Court of Appeals, or any similar or related organization.

13. While W. Va. Rules of Professional Conduct Rule 1.8(h) appears, at first blush, to also be involved in this instance, a closer examination of the rule's language and the surrounding circumstances dictates a contrary finding. Rule 1.8(h) directs that

[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice *unless* permitted by law *and* the client is independently represented in making the agreement, *or* settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

(Emphasis added). At the time that Mr. Artimez and Mr. Crook entered into their settlement agreement, Mr. Crook was represented by Mr. Gellner and had been represented by him for some four months prior to entering this contract. While the scope of this representation is certainly not the most neutral, considering Mr. Artimez's and Mr. Gellner's joint law practice at the time these events occurred, Mr. Gellner still qualified as an independent representative in that he was not the attorney with whom Mr. Crook was directly contracting. Nevertheless, in order to insulate such contractual dealings from the merest hint of suspicion or impropriety, it would seem that the better practice would be for the client to be represented by a completely objective and

Disciplinary Board recommended sanctioning Mr. Artimez by publicly reprimanding him and by charging him with the cost of the subject disciplinary proceeding.

Rule 8.4(d) of the West Virginia Rules of Professional Conduct defines professional misconduct as including "engag[ing] in conduct that is prejudicial to the administration of justice." Under the facts of the instant proceeding, Mr. Artimez prejudiced the administration of justice by drafting and entering into a contractual agreement which hampered Mr. Crook's ability to report his attorney's dubiously ethical behavior.[14] Simply stated, Mr. Artimez acted improperly by trying to absolve himself of the consequences of a potential violation of ethical rules resulting from his affair with his then-client's wife.

■ The disciplinary rules regulating the practice of law in this State have been implemented to ensure that clients are represented by competent attorneys who practice their profession with fairness, honesty, and integrity. "Integrity and honor are critical components of a lawyer's· character as are a sense of duty and· fairness." *In re Brown,* 166 W.Va. at 232, 273 S.E.2d at 570. *Accord Committee on Legal Ethics of The West Virginia State Bar v. Ikner,* 190 W.Va. 433, 437, 438 S.E.2d 613, 617 (1993) ("Critical traits of a lawyer's character are honor and integrity."). *See also* W. Va. Rules of Professional Conduct, Preamble ("A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."); W. Va. Standards of Professional Conduct, Preamble ("Lawyers' conduct should be characterized at all times by personal courtesy and profes-

sional integrity. In fulfilling their duty as lawyers to represent a client vigorously, they should be mindful of their obligations to the administration of justice. Lawyers owe to opposing counsel, the parties, the courts and the court's staff a duty of courtesy, candor, honesty, diligence, fairness and cooperation."). To guarantee the quality of legal services supplied to clients, "[a] lawyer's conduct is governed by the West Virginia Rules of Professional Conduct and by the rules of the courts before which the lawyer practices. A lawyer's conduct is governed by the highest standards of courtesy, integrity, human decency and respect for the judicial system the lawyer serves. . . . " W. Va. Standards of Professional Conduct Standard I.D.2. *See also In re Youmans,* 118 N.J. 622, 633, 573 A.2d 899, 907 (1990) (per curiam) (cautioning, in context of attorney's business dealings with a client, that an attorney's "conduct must measure up to the high standards required of a member of the bar even if [his/her] duties in a particular transaction do not involve the practice of law" (internal quotations and citation omitted)).

■ When, however, a lawyer breeches his/her ethical obligations by running afoul of the disciplinary rules' objectives, disciplinary proceedings may be instituted. *See, e.g.,* W. Va. Rules of Professional Conduct, Scope ("Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process."); W. Va. Rules of Lawyer Disciplinary Procedure Rule 3.14(1) ("It shall be a ground for discipline for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers[.]"). "The

impartial attorney who has had no prior connection with the subject of negotiation. *See, e.g., State ex rel. Morgan Stanley & Co., Inc. v. Mac-Queen,* 187 W.Va. 97, 102, 416 S.E.2d 55, 60 (1992) (noting "the ethical requirement that attorneys must 'avoid, as much as is possible, the appearance of impropriety'" (quoting *Graf v. Frame,* 177 W.Va. 282, 289, 352 S.E.2d 31, 38 (1986) (citation omitted))); *Committee on Legal Ethics of The West Virginia State Bar v. Tatterson,* 173 W.Va. 613, 617, 319 S.E.2d 381, 386 (1984) ("'An attorney's conduct should avoid even the appearance of impropriety.'" (quoting *Louisiana State Bar Ass'n v. Edwins,* 329 So.2d 437, 444 (La.1976)) (footnote omitted)). *See also* Syl. pt.

2, *State ex rel. Taylor Assocs. v. Nuzum,* 175 W.Va. 19, 330 S.E.2d 677 (1985) ("Under the *Code of Professional Responsibility,* a lawyer may be disqualified from participating in a pending case if his continued representation would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party.").

14. An attorney may, however, in certain circumstances, limit his/her liability to a client for professional misconduct giving rise to a civil suit for malpractice. *See supra* note 13.

principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syl. pt. 3, *Daily Gazette Co., Inc. v. Committee on Legal Ethics of The West Virginia State Bar,* 174 W.Va. 359, 326 S.E.2d 705 (1984). *Accord Committee on Legal Ethics of The West Virginia State Bar v. Mullins,* 159 W.Va. 647, 651, 226 S.E.2d 427, 429 (1976), *overruled on other grounds by Committee on Legal Ethics of The West Virginia State Bar v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993) ("[T]he primary purpose of the ethics committee is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys[.]"). Without the adoption of rules to govern the conduct of attorneys and the enforcement of these canons through disciplinary proceedings, the public, generally, and individual clients, specifically, would be ill-protected from the occasional unscrupulous lawyer who attempts to circumvent such standards. Because the contract which Mr. Artimez drafted and entered into with his former client enabled him to avoid the ethical obligations to which he is bound to adhere and permitted Mr. Crook to renounce the very rules that were implemented for his own benefit, we cannot condone Mr. Artimez's behavior.

Having found that Mr. Artimez's conduct prejudiced the administration of justice in violation of W. Va. Rules of Professional Conduct Rule 8.4(d), we must next determine what form of discipline is appropriate under these circumstances. Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the sanctions that may be imposed upon a finding that a disciplinary rule has been violated:

(1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the Panel or the Court finds the reimbursement will pose an undue hardship on the lawyer.

Willful failure to reimburse the Board may be punished as contempt of the Court.

When selecting among these alternatives, this Court casts the deciding vote as to the punishment befitting the infraction. *See* Syl. pt. 3, *Blair,* 174 W.Va. 494, 327 S.E.2d 671. However, we also afford the Panel's recommendations "substantial consideration" barring no blatant mistake of law or fact or other evidence of an arbitrary assessment of the case. *See* Syl. pt. 3, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567.

Despite our regard for the Panel's recommendations, we nevertheless must consider the particular facts of each lawyer disciplinary proceeding and assess the appropriate sanction on a case-by-case basis.

In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform system of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

Syl. pt. 2, *Mullins,* 159 W.Va. 647, 226 S.E.2d 427. *Accord Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 36, 464 S.E.2d 181, 190 (1995) ("We endeavor to make an individualized assessment of the sanction rather than follow a punishment schedule."). For example, "[p]rior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syl. pt. 5, *Committee on Legal Ethics of The West Virginia State Bar v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986). Contrariwise, "[a]lthough the prior good record of [a] respondent [attorney] does not excuse the misconduct with which he is charged . . ., it may be considered in mitigation with regard to the disposition of the case." *Committee on Legal Ethics of The West Virginia State Bar v. Pence,* 216 S.E.2d 236, 242 (W.Va. 1975). We turn now to the case at hand.

During the proceedings below, the parties recommended that Mr. Artimez be publicly reprimanded and charged with the costs of this disciplinary matter. The Panel thereafter adopted this recommendation and requests this Court to impose the same method of punishment herein. We agree that a public reprimand and an assessment of costs is suitable punishment under the present circumstances. While Mr. Artimez acted intentionally in drafting and entering into this contract and effectively usurped his former client's right to pursue ethics charges against him, we also find that numerous factors mitigate the degree of sanctions warranted in this case. *See* W. Va. Rules of Lawyer Disciplinary Procedure Rule 3.16. First, the conduct upon which this contract was based did not constitute a clear violation of an existing disciplinary rule. As we will explain more fully in Section III.B., *infra*, there is presently no rule which directly prohibits an attorney from engaging in a sexual relationship with his/her client's spouse. Accordingly, while the contract absolving Mr. Artimez of professional responsibility for his actions was improper, we cannot say that the relationship, in and of itself, was in violation of the existing disciplinary rules. Next, the record demonstrates that Mr. Artimez has fully cooperated with the Board's investigation of the charges against him, voluntarily provided testimony, and repeatedly demonstrated remorse for his actions.

Moreover, Mr. Artimez, who has been practicing law for nearly twenty years,[15] has not had any prior instances of professional misconduct. Additionally, while the emotional damage to Mr. Crook undoubtedly has been great, it appears that the financial loss which he has suffered as a result of Mr. Artimez's actions is fairly minimal. Not only did Mr. Gellner successfully settle Mr. Crook's personal injury action, but Mr.

Crook also received, as a result of the inappropriate contract at issue herein, a substantial sum of money from Mr. Artimez[16] and a waiver of the attorney's fees associated with his separate personal injury action. We note finally that the method of discipline imposed in this proceeding is consistent with the sanctions we have imposed in other cases involving conduct found to be prejudicial to the administration of justice in violation of W. Va. Rules of Professional Conduct Rule 8.4(d). *See, e.g., Lawyer Disciplinary Bd. v. Veneri,* 206 W.Va. 384, 524 S.E.2d 900 (1999) (per curiam) (imposing sanctions of admonishment and payment of disciplinary proceeding's costs); *Lawyer Disciplinary Bd. v. Kupec,* 204 W.Va. 643, 515 S.E.2d 600 (1999) (per curiam) (ordering discipline of admonishment, with conditions, and reimbursement of disciplinary proceeding's costs). *See also Committee on Legal Ethics of The West Virginia State Bar v. Hazlett,* 179 W.Va. 303, 367 S.E.2d 772 (1988) (sanctioning attorney with public reprimand and costs of disciplinary proceeding for improperly settling claims of professional misconduct with clients under then-applicable West Virginia Code of Professional Responsibility).

### B. Lawyer's Sexual Relationship with Client's[17] Spouse (W. Va. Rules of Professional Conduct Rule 1.7(b))

Mr. Artimez has also been charged with violating Rule 1.7(b) of the West Virginia Rules of Professional Responsibility, which prohibits a lawyer from representing a client when there exists a conflict of interest. This charge stemmed from Mr. Artimez's sexual relationship with Mrs. Crook, his then-client's wife. During the proceedings below, the parties mutually suggested that this issue was one of first impression because Mrs. Crook was not a client of Mr. Artimez to whom the prohibitions of W. Va. Rules of

---

15. Mr. Artimez was admitted to the practice of law in West Virginia on May 19, 1981.

16. We may presume that Mr. Artimez, given the other difficulties which he has faced in this proceeding, would not likely seek reimbursement of the sums he paid to Mr. Crook in consideration for his agreement to release Mr. Artimez from professional responsibility.

17. Since Mr. Artimez's relationship with Mrs. Crook began during the course of his representation of Mr. Crook, we refer to Mr. Crook as Mr. Artimez's client, despite the fact that Mr. Crook ultimately was represented by Mr. Gellner. *Cf.* note 11, *supra*.

Professional Conduct Rule 8.4(g) [18] would apply and because no other disciplinary rule specifically precludes such a relationship. Furthermore, because Rule 1.7(b) bases the existence of a conflict of interest on the lawyer's own reasonable beliefs, and because Mr. Artimez believed no such conflict existed, the parties recommended that he not be subject to discipline for this charge.

As the parties have duly noted, this matter is indeed one of first impression for this Court. The sole rule governing an attorney's sexual relationships, Rule 8.4(g), pertains only to affairs between an attorney and his/her client.[19] Since no lawyer-client relationship ever existed between Mr. Artimez and Mrs. Crook, this rule clearly does not apply in this instance.[20] Before Rule 8.4(g) was adopted by this Court, we had occasion to consider the precise issue addressed therein, *i.e.*, the propriety of a sexual relationship between an attorney and his/her client. *Musick v. Musick*, 192 W.Va. 527, 453 S.E.2d 361 (1994). At that time, we were somewhat reluctant to adopt a bright-line standard to prohibit such conduct until the matter had been addressed by our professional disciplinary rules.

It is a better practice for attorneys not to engage in sexual relations with any client in any type of case. *Since no existing provision of the West Virginia Rules of Professional Conduct specifically prohibits a lawyer/client sexual relationship, we find that a lawyer's conduct of engaging in sexual relations with a client is not, in and of itself, a breach of professional responsibility at this time. However, other rules of professional conduct may be violated by a lawyer's sexual relationship with his client.*

Syl. pt. 1, *id.* (emphasis added). *But cf. Ikner*, 190 W.Va. at 436, 438 S.E.2d at 616

(deciding that, "even though there is no specific rule or case which has addressed th[e] issue [of whether an attorney's license may be suspended when he/she has disappeared during a pending disciplinary proceeding], we will address the issue under our inherent power to regulate the practice of law" (citations omitted)). Also contributing to our hesitancy to finally rule on the propriety of such conduct was our appreciation of the ever-changing nature of human relationships. Even with the adoption of a clear standard of professional conduct, it is quite difficult to regulate the behavior of individual adults. Grappling with this dilemma in *Musick*, we observed that "it is tempting to adopt an ethical standard which would prohibit such relationships with clients. However, due to the complexity of human relationships and the myriad unique factual situations which may arise, it is a difficult proposition to write a rule which is fair and equitable under all circumstances." 192 W.Va. at 530 n. 2, 453 S.E.2d at 364 n. 2. While the precise intricacies of a relationship between a lawyer and his/her client are not involved when the trysting parties are the lawyer and his/her client's spouse, there nevertheless are certain factors which cast doubt upon the propriety of such an arrangement.

■ From the client's perspective, a lawyer owes a duty of loyalty to his/her client. "Loyalty is an essential element in the lawyer's relationship to a client." W. Va. Rules of Professional Conduct Rule 1.7 cmt. *Loyalty to a Client.* In addition, as we noted in the preceding section of this opinion, a lawyer is expected to deal with his/her clients fairly, honestly, and with integrity. *See, e.g.*, W. Va. Standards of Professional Conduct, Preamble; *In re Brown*, 166 W.Va. at 232, 273 S.E.2d at 570. Implicit in such dealings

---

**18.** Rule 8.4(g) of the West Virginia Rules of Professional Conduct provides:

[i]t is professional misconduct for a lawyer to:

. . . .

(g) have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship. For purposes of this rule, "sexual relations"

means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or as a means of abuse.

**19.** For the language of W. Va. Rules of Professional Conduct Rule 8.4(g), see *supra* note 18.

**20.** *See supra* note 6.

is the sense that, because of a lawyer's various professional responsibilities, there exists a relationship of trust between an attorney and his/her client. *See, e.g., Kopelman & Assocs., L.C. v. Collins,* 196 W.Va. 489, 496 n. 7, 473 S.E.2d 910, 917 n. 7 (1996) (recognizing "special trust and confidence that must exist between attorney and client" (citations omitted)). *See also Lawyer Disciplinary Bd. v. Friend,* 200 W.Va. 368, 373, 489 S.E.2d 750, 755 (1997) (per curiam) ("An attorney occupies a position of trust with regard to his or her client."); *Committee on Legal Ethics of The West Virginia State Bar v. White,* 176 W.Va. 753, 756, 349 S.E.2d 919, 922 (1986) (per curiam) (observing that, in a relationship between a client and his/her attorney, "[t]he client comes to the attorney trusting in his expertise and honesty"). In essence, an attorney is a repository of the client's confidences, and the trust a client places in his/her lawyer is so highly esteemed, and deemed so integral to a successful attorney-client relationship, that it has been afforded a status of privilege. *See, e.g.,* W. Va. R. Evid. 501 (recognizing common law privileges); *State v. Fisher,* 126 W.Va. 117, 121, 27 S.E.2d 581, 583 (1943) ("It is settled law in this State that a communication to an attorney by a client or former client dealing with relation as attorney and client is privileged." (citations omitted)). *See generally* W. Va. Rules of Professional Conduct Rule 1.6 and cmt. (discussing lawyer's responsibility to maintain confidentiality of communications with client). When, however, a lawyer commences a sexual relationship with his/her client's spouse, it is not hard to imagine that the attorney-client relationship that has been built upon trust and an expectation of loyalty will come to an abrupt end, much like a gust of wind demolishes a stable, but nevertheless vulnerable, house of cards.

On the other hand, a lawyer may represent a client even though there appears to a be a conflict between the interests of the client and the lawyer him/herself if the lawyer reasonably believes that his/her representation will not be affected thereby and if the client, who has been informed of the conflict, agrees to continued representation. W. Va. Rules of Professional Conduct Rule 1.7(b). However, this method of client protection is not entirely foolproof as the attorney who is involved in a sexual relationship with his/her client's spouse is the same person who is charged with recognizing an irreconcilable conflict situation. *See* W. Va. Rules of Professional Conduct Rule 1.7 cmt. *Conflict Charged by an Opposing Party* ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation."). *But see* Syl. pt. 1, *Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112 (1991) ("A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship."). Thus, it is not difficult to conceive of a situation wherein the directives of Rule 1.7(b) are simply unworkable. For example, consider the scenario of an attorney who is having an affair with his/her client's spouse and determines that his/her personal interests in the relationship conflict with those of his/her client. The attorney then decides to follow the directives of Rule 1.7(b) and determines that he/she can nevertheless continue to represent his/her client with no adverse effects. However, in order to obtain his/her client's consent to the continued representation, the attorney must further jeopardize the previously established relationship, founded on trust and loyalty, which he/she enjoys with his/her client and admit to having an adulterous relationship with his/her client's spouse. Given this scenario, it seems rare, indeed, that most members of the bar would be able to objectively reconcile their professional duties with their moral obligations.

■ In light of these various concerns attending sexual relationships between a lawyer and his/her client's spouse, we are reluctant to devise a hard and fast ethical rule without the benefit of a formal disciplinary standard to govern such conduct. Therefore, we hold that lawyers should not engage in sexual relations with their clients' spouses in

any type of case. Since no existing provision of the West Virginia Rules of Professional Conduct specifically prohibits a sexual relationship between a lawyer and his/her client's spouse, we find, at this time, that a lawyer's conduct in this regard is not, in and of itself, a breach of professional responsibility. Nevertheless, a lawyer's sexual relationship with his/her client's spouse may violate other rules of professional conduct.[21]

■ Turning now to the case presently before us, we observe that the parties correctly ascertained that Mr. Artimez's sexual relationship with Mrs. Crook was not prohibited by any of the current rules of professional conduct. That is not to say, however, that Mr. Artimez's conduct was entirely ethical. As we noted above, the absence of a disciplinary rule which plainly governs a certain instance of conduct does not automatically render the suspect behavior permissible. In this instance, we agree with the Board that Mr. Artimez's actions implicated the provisions of Rule 1.7(b). The relevant portion of this rule directs that

> [a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, *or by the lawyer's own interests,* unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

W. Va. Rules of Professional Conduct Rule 1.7(b) (emphasis added). For his part, Mr. Artimez has stated that he did not believe his relationship with Mrs. Crook would jeopardize his continued representation of Mr. Crook as Mrs. Crook had no interest in Mr. Crook's personal injury action.[22] Nonetheless, at some point during his pursuit of Mr. Crook's claims, Mr. Artimez admitted to having felt some discomfort at continuing to represent him as a client while he was having an affair with his wife, and ultimately transferred Mr. Crook's file to his law partner, Mr. Gellner, for the final resolution of his case.[23] While we certainly cannot condone Mr. Artimez's affair, we nonetheless appreciate his recognition of his irreconcilable conflicting personal interests and his voluntary withdrawal from Mr. Crook's case. Given the novelty of this charge and the fact that lawyers are generally entrusted with resolving the conflicts of interest which they inevitably encounter, we do not find further discipline to be warranted, and, accordingly, adopt the Panel's recommendation in this regard.

However, we would be remiss if we did not also acknowledge the irreparable damage

---

**21.** During our consideration and determination of this matter, we looked to the trend among our sister jurisdictions for guidance. We have been able to locate only one state that has disciplined an attorney for having a sexual relationship with his/her client's spouse: South Carolina. In the two reported cases from that jurisdiction concerning this topic, both of which were rendered per curiam, the attorneys counseled their clients regarding marital issues that were directly related to the affairs between the attorneys and their clients' spouses. *See In re Reynolds,* 335 S.C. 165, 515 S.E.2d 927 (1999) (per curiam); *In re Hawkins,* 320 S.C. 57, 463 S.E.2d 92 (1995) (per curiam). *Cf. Colorado v. Bauder,* 941 P.2d 282 (Colo.1997) (en banc) (per curiam) (disciplining attorney who solicited sexual favors from client's wife and client's girlfriend in exchange for financial remuneration). The only other reported cases addressing this issue decided whether a criminal defendant's constitutional right to effective assistance of counsel is abrogated when the defendant's attorney has an undisclosed sexual relationship with the defendant's spouse during the defendant's criminal trial. *See California v. Sing-*

er, 226 Cal.App.3d 23, 275 Cal.Rptr. 911 (1990) (finding conflict of interest resulting from defendant's attorney's undisclosed sexual relationship with defendant's wife deprived defendant of effective assistance of counsel and entitled him to new trial); *Hernandez v. Florida,* 750 So.2d 50 (Fla.Dist.Ct.App.), *vacated on rehearing,* 750 So.2d 55 (Fla.Dist.Ct.App.1999) (en banc) (observing that illicit affair between defendant's attorney and defendant's wife created conflict of interest which raised question of whether defendant had received effective assistance of counsel but vacating ruling on rehearing because defendant had not demonstrated that his defense had been adversely affected by his attorney's divided loyalty).

**22.** Indeed, Mrs. Crook had no claim for loss of consortium as she and Mr. Crook were not married at the time of the accident, and she previously resolved her separate claims resulting from the accident. *See supra* notes 6 and 7.

**23.** *See supra* Section I.

that Mr. Artimez's behavior has had to his relationship with his former client, Mr. Crook, and to the reputation of the legal profession as a whole. We remind counsel that, even as private citizens, lawyers are guided not only by the Rules of Professional Conduct, but also by "personal conscience and the approbation of professional peers." W. Va. Rules of Professional Conduct, Preamble. Thus, when facing similarly "difficult issues of professional discretion," we caution members of the bar to "exercise [their] sensitive professional and moral judgment guided by the basic principles underlying the Rules [of Professional Conduct]." *Id.*

## IV.

### CONCLUSION

For the foregoing reasons, we adopt the final recommendations of the Hearing Panel Subcommittee. We conclude that Mr. Artimez violated the terms of W. Va. Rules of Professional Conduct Rule 8.4(d) by contracting with his client to obtain, and by paying him consideration to execute, a release from all possible claims for professional misconduct. For this rule violation, we adopt the Panel's recommendation of discipline that Mr. Artimez be publicly reprimanded and charged with the costs of this disciplinary proceeding. In addition, we find that Mr. Artimez's sexual relationship with his client's wife, though not *per se* prohibited by any existing disciplinary rules, nevertheless implicated the provisions of W. Va. Rules of Professional Conduct Rule 1.7(b). As the information before us demonstrates that Mr. Artimez reasonably did not believe his representation of Mr. Crook to be adversely affected by this affair, though, we agree that his conduct does not warrant the imposition of further sanctions.

Reprimanded.

Justice SCOTT did not participate in the consideration or the decision of this case.