515 S.E.2d 600

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Thomas W. KUPEC, a Member of the West Virginia State Bar, Respondent.**

No. 23011.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided May 19, 1999.

Steven Johnston Knopp, Esq., Lawyer Disciplinary Counsel, Charleston, West Virginia, Attorney for Complainant.

Catherine D. Munster, Esq., James A. Varner, Esq., Tiffany R. Durst, Esq., McNeer, Highland, McMunn & Varner, L.C., Clarksburg, West Virginia, Attorneys for Respondent.

PER CURIAM:

This lawyer disciplinary matter was previously before the Court in *Lawyer Disciplinary Board v. Kupec*, 202 W.Va. 556, 505 S.E.2d 619 (1998). In that case, the Court held that the respondent, Thomas W. Kupec, violated Rules 8.4(c) and 8.4(d) of the *Rules of Professional Conduct* [1989] by improperly using client trust funds for the payment of office expenses and other costs.

In our previous opinion, we remanded the matter to the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board for additional fact-finding and recommendations on two charges that the Court determined the HPS had improperly dismissed. We held in abeyance the imposition of any sanctions, pending the return of the case from remand.

Pursuant to our first opinion, the HPS conducted a hearing on September 3, 1998. On October 19, 1998, the HPS filed its supplemental findings of fact, conclusions of law, and recommendations with this Court. The HPS recommends that the two remanded charges against Mr. Kupec, which are discussed in detail *infra*, should be dismissed. We accept the HPS's findings and recommendations and dismiss those two charges.

With respect to the issue of the sanctions that we held in abeyance, we do not adopt the HPS's recommended sanction that Mr. Kupec be suspended from the practice of law for 60 days, for violating Rules 8.4(c) and 8.4(d). As set forth below, we hold instead that Mr. Kupec should be admonished for his conduct.

I.

The first charge that the HPS was to consider upon remand was whether Mr. Kupec had failed to act with reasonable diligence and promptness in his representation of his client, in violation of Rule 1.3 of the *Rules of Professional Conduct* [1989], and DR 6–101(A)(3) of the now superseded *Code of Professional Responsibility* [1970]. The second charge that the HPS was to consider was whether Mr. Kupec engaged in conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5) of the *Code of Professional Responsibility* [1970]. The HPS on remand found that the Office of Disciplinary Counsel ("ODC") had failed to prove the factual allegations underlying these two charges by clear and convincing evidence, and recommends that these charges be dismissed.

We review the HPS's conclusions and recommendations *de novo*. As we stated in Syllabus Point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

A *de novo* standard applies to a review of the adjudicatory record made before

the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Hearing Panel Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Hearing Panel Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*In accord*, Syllabus Point 1, *Lawyer Disciplinary Board v. Kupec*, 202 W.Va. 556, 505 S.E.2d 619 (1998).

With this standard in mind, we turn to the findings and recommendations of the HPS.

## II.

■ First, we must determine whether Mr. Kupec acted with reasonable diligence and promptness in the execution of his duties in this case.

Mr. Kupec was charged with violating Rule 1.3 of the *Rules of Professional Conduct* [1989], and DR 6–101(A)(3) of the *Code of Professional Responsibility* [1970]. Rule 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." DR 6–101(A)(3) stated, in pertinent part, that "[a] lawyer shall not ... (3) Neglect a legal matter entrusted to him."

The ODC alleges that Mr. Kupec violated Rule 1.3 and Canon DR 6–101(A)(3) by failing to promptly prepare a final report in his capacity as Special Commissioner. The ODC is required to prove this allegation by clear and convincing evidence. Syllabus Point 1, *Lawyer Disciplinary Board v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). *In accord*, Syllabus Point 2, *Lawyer Disciplinary Board v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995).

The evidence presented to the HPS indicates the following: in 1983, Mr. Kupec was hired by Freda Mae Barker Bumgardner, and as her attorney, Mr. Kupec filed a partition suit styled *Bumgardner v. Bradley* in the Circuit Court of Ritchie County on September 1, 1983. The partition suit involved three separate parcels of surface and mineral interests. Three separate title examinations of the three parcels were needed in an attempt to identify all of the individuals who might have a claim to the three parcels. Mr. Kupec was also required to redeem the properties for back taxes, to prevent the properties from escheating to the State.

Mr. Kupec was subsequently appointed to act as a Special Commissioner by the circuit court to conduct a public sale of the three parcels. On February 26, 1985, Mr. Kupec conducted a public sale, and as a result of that sale he received three checks totaling $50,800.00.

The proceeds from the sale were deposited by Mr. Kupec in his law firm's general account, identified as the "Michael and Kupec Special Account," an account that was created in 1938 by a predecessor lawyer to Mr. Kupec in the law firm. At the time of the sale, the account did not bear interest, nor was it an account established and designated for the special purpose of holding the proceeds of the sale awaiting distribution. The account was used to hold client funds, and for the payment of expenses related to representing clients.

The *Bumgardner* partition case was presided over by four different circuit court judges. The case was first before Judge Gene Campbell, who died. Upon his death, the *Bumgardner* case was assigned to Judge Daniel B. Douglass, who was on temporary assignment.

As mentioned previously, the public sale was held on February 26, 1985. On April 17, 1985, Judge Douglass entered an order approving the sale of the three properties. The order also authorized Mr. Kupec to pay all fees and expenses incurred as a result of the partition suit, to pay himself a Special Commissioner fee equal to 5% of the sale proceeds, and to pay himself an additional attorney's fee of $3,860.00 for other work done regarding the properties.

The order further authorized Mr. Kupec to pay Ms. Bumgardner her share of the sale proceeds. Mr. Kupec was also ordered to tender the remaining sum of $28,802.26 to

the General Receiver for the Circuit Court of Ritchie County, because the persons entitled to those funds were apparently unknown to the court. Pursuant to Judge Douglass's order, Mr. Kupec made a distribution of the sale proceeds to his client, paid the expenses of the sale, and paid himself his Special Commissioner fee and attorney's fee of $3,860.00.

Approximately one week after the entry of the order by Judge Douglass, Governor Gaston Caperton appointed Sam White as Judge of the Third Judicial Circuit, the circuit that included the Circuit Court of Ritchie County. On May 21, 1985, Mr. Kupec tendered to Judge White his "Report of Final Receipts and Disbursements and Distributions," a check for $28,802.26 drawn on the Michael and Kupec Special Account for the unexpended proceeds of the partition sale, for deposit with the General Receiver, and a proposed final order.

Judge White refused to accept Mr. Kupec's report and refused to enter the proposed final order. Judge White testified before the HPS that he rejected the order because he would not approve a $3,860.00 attorney's fee in a partition suit. The record suggests that Judge White rejected the proposed final order without reviewing the case file, and without knowing what additional work Mr. Kupec had performed concerning the three properties.[1] Judge White apparently also never notified Mr. Kupec of his reasons for rejecting the order.

The evidence presented to the HPS indicates that Mr. Kupec made several efforts between 1985 and 1992 to resolve the *Bumgardner* matter, both by discussing the case with the Circuit Clerk for Ritchie County and with Judge White. Judge White declined to discuss the case or give Mr. Kupec any specific directions. The HPS noted that

on one occasion, Judge White "vociferously rejected" Mr. Kupec's efforts to discuss the case by tossing the case file at Mr. Kupec and terminating the conversation.

On another occasion, Judge White entered an order directing Mr. Kupec to submit his final report on January 21, 1987. In response, Mr. Kupec revised the final report he had submitted in May 1985 to reflect the reduction in the proceeds amount by $300 for the two years of bond premiums that had accumulated and been paid by Mr. Kupec since submitting the initial report. The final report otherwise detailed all of the income and expenses incurred in the settlement of the *Bumgardner* case. Judge White at this time rejected the report because the check submitted by Mr. Kupec was $300.00 less than the check previously submitted in 1985—even though the $300.00 difference was clearly reflected in the final report as the result of the payment of bond premiums.

In 1992, Mr. Kupec again filed a final report with Judge White, as well as a check drawn on the Michael and Kupec Special Account for the funds to be deposited with the General Receiver of Ritchie County. Judge White again refused to approve the final report submitted by Mr. Kupec.

On May 8, 1992, Judge White filed a complaint against Mr. Kupec with the Lawyer Disciplinary Board.[2] Judge White then recused himself from further proceedings in the *Bumgardner* matter, and Judge Arthur N. Gustke was assigned to replace Judge White.

Mr. Kupec subsequently submitted the final report to Judge Gustke, who immediately entered an order approving the report. The final report approved by Judge Gustke was substantially similar to the 1985 and later reports submitted to Judge White.

---

1. Mr. Kupec asserted that the $3,860.00 constituted his fee for work separate from his duties as a Special Commissioner. That separate work included redeeming the three properties back from taxes, performing three separate title examinations, traveling to Ohio to obtain death records, and preparing various documents such as redemptions of certificates.

2. The complaint alleged that: (1) Mr. Kupec never placed the sale proceeds in an interest-bearing

account as required by the circuit court in 1985; (2) Mr. Kupec disbursed part of the sale proceeds to his client, and paid himself $3,860.00 in attorney's fees, without circuit court authorization; (3) Mr. Kupec never settled his Special Commissioner account, as required by law; and (4) Mr. Kupec was indebted to the General Receiver of the Circuit Court of Ritchie County for substantial sums.

The HPS, after reviewing this record, concluded that the evidence was insufficient to establish a violation of either Rule 1.3 or DR 6–101(A)(3), and recommends that the charges be dismissed. We agree with the HPS's recommendation.

■ In *Committee on Legal Ethics v. Karl,* 192 W.Va. 23, 27, 449 S.E.2d 277, 281 (1994), the Court discussed the conduct necessary to constitute neglect under Rule 1.3 and DR 6–101(A)(3). We stated (quoting from the *ABA Committee on Ethics and Professional Responsibility, Informal Op. 1273* (1973)) that:

> Neglect involves indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.

We agree with the HPS's conclusion that Mr. Kupec did not treat this matter with indifference, and did not act with a conscious disregard for the responsibility owed to his client. The record supports a finding that Mr. Kupec repeatedly presented a final report to Judge White, and Judge White repeatedly rejected that report without explanation to Mr. Kupec. While other remedies may have been available to Mr. Kupec, we accept the HPS's conclusion that his conduct did not constitute neglect.

Furthermore, the record developed before the HPS on remand indicates that much of the responsibility for the delay in resolving this case can be placed on the circuit court, and not the actions of Mr. Kupec. Judge White testified before the HPS that he was as much to blame for the failure to settle the *Bumgardner* case as Mr. Kupec, and testified that he did not believe the delay was an ethical violation on Mr. Kupec's part.

Additionally, there was no evidence of any neglect or injury to Mr. Kupec's client in the partition suit, Ms. Bumgardner. The record indicates that Mr. Kupec took a proactive approach, and acted to prevent the properties from escheating to the State, and thereby preserved Ms. Bumgardner's proportionate share of the money from the sale of the properties. The delays in obtaining court approval of the final report occurred after Ms. Bumgardner's involvement in the case had ceased.

Based upon the evidence before the HPS, we accept the HPS's finding that there was insufficient evidence that Mr. Kupec violated Rule 1.3 or DR 6–101(A)(3). We therefore adopt the HPS's recommendation that the charges under these rules be dismissed.

■ Next we address whether Mr. Kupec's conduct was prejudicial to the administration of justice.

Mr. Kupec was charged with violating DR 1–102(A)(5) of the *Code of Professional Responsibility* [1970]. That rule stated, in pertinent part, that "[a] lawyer shall not ... (5) Engage in conduct that is prejudicial to the administration of justice."

The ODC charged that Mr. Kupec engaged in conduct prejudicial to the administration of justice by failing, pursuant to court order, to place the proceeds from the public sale of the property into an interest-bearing account until sometime after August 1991 and before March 1992. Mr. Kupec was also accused of improperly receiving his $3,860.00 attorney fee prior to the final report being made.

One of the circuit court's early orders, prior to the 1985 sale of the properties, required the proceeds of the sale to be placed in an interest-bearing account. However, Mr. Kupec testified that he discussed with then-Judge Gene Campbell that he wished to maintain the money in his law firm account in Clarksburg, which was a non-interest bearing account, on the assumption that the matter would be promptly resolved. Mr. Kupec asserted that Judge Campbell ordered him to maintain the money in that account, and testified that Judge Campbell orally advised him that an interest-bearing account was not necessary. The ODC has offered no evidence to contradict Mr. Kupec's recitation of the events, and Judge Campbell is now deceased.

Furthermore, Judge White testified that during his tenure as judge, he would often verbally order an attorney that something should be done in a manner different from what was specified in a written order, and testified that the paperwork would later catch up with what he told the lawyer. Judge White testified that when he gave a verbal order, he expected the lawyer to comply. Thus, Mr. Kupec's unrebutted testimony that he put the sale proceeds in a non-interest bearing account pursuant to Judge Campbell's oral order is entirely consistent with the pattern and practice of that judicial circuit.

The HPS concluded that:

Although the failure to place said funds in an interest bearing account was a technical violation of the prior Order of the Circuit Court, given Respondent's testimony regarding his conversation with Judge Campbell regarding the same, and consideration of all of the facts and circumstances regarding this case, the Hearing Panel Subcommittee cannot find that the conduct by the Respondent rises to the level of an ethical violation of DR–1–102(A)(5).

Furthermore, the HPS concluded that ODC failed to prove, by clear and convincing evidence, that Mr. Kupec violated DR 1–102(A)(5) by receiving payment of attorneys fees prior to the Special Commissioner's final report being approved by the circuit court. The HPS found, in view of the April 17, 1985 order by Judge Douglass approving the disbursements and payment of attorneys fees, that Mr. Kupec "had a reasonable basis upon which to receive his $3,860.00 attorney fee at the time the same was paid to him." The HPS recommended that this charge be dismissed as well.

After reviewing the record in this case, we adopt the HPS's findings and accept the recommendation that the charge, that Mr. Kupec violated DR 1–102(A)(5), be dismissed. While the written order of the circuit court directed Mr. Kupec to place the sale proceeds in an interest-bearing account, the HPS found that Mr. Kupec presented credible evidence that Judge Campbell authorized him to place the proceeds in his firm's non-interest bearing account. Furthermore, Mr. Kupec was authorized by Judge Douglass's April 17, 1985 order to recover his fees from the sale proceeds. We cannot, on this record, find a violation of DR 1–102(A)(5) by clear and convincing evidence, and therefore dismiss this charge.

### III.

■ In our prior opinion in this case, we concluded that Mr. Kupec had, by clear and convincing evidence, violated Rules 8.4(c) and (d) of the *Rules of Professional Responsibility. See Lawyer Disciplinary Board v. Kupec*, 202 W.Va. 556, 570–72, 505 S.E.2d 619, 633–635 (1998). Rule 8.4(c) states that "[i]t is professional misconduct for a lawyer to ... (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation," while Rule 8.4(d) prohibits a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice."

Mr. Kupec placed the proceeds remaining from the sale of the three properties into a general client trust account. That account was routinely used for the payment of firm expenses or advances for the prosecution of other clients' cases. We concluded that the record then before the Court supported a finding that, by placing the sale proceeds in such a general account and then using that money for firm expenses, Mr. Kupec had violated Rules 8.4(c) and (d). We held that Mr. Kupec's unauthorized use of the sale proceeds constituted misappropriation of funds held in trust, 202 W.Va. at 572, 505 S.E.2d at 635, and could be considered to be dishonest and deceitful conversion. 202 W.Va. at 571, 505 S.E.2d at 634.

However, we stated in our prior opinion that the penalty for a misappropriation offense must be consistent with the level of intent by the lawyer and the level of the injury. Referring to the standards proffered by the American Bar Association, we said:

The American Bar Association Model Standards for Imposing Lawyer Sanctions (hereinafter "ABA standards") classify misappropriation offenses according to the level of intent and the level of the injury. The ABA standards are consistent with the

general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds. Where there is little or no actual or potential injury to the owner of entrusted funds, and when the lawyer knows or should know he/she is dealing improperly with entrusted funds, the ABA standards suggest suspension. When the lawyer is merely *negligent* in dealing with entrusted funds, the ABA standards suggest reprimand or admonishment. *See generally* ABA/BNA Lawyers' Manual on Professional Conduct § 01:801 (1992).

*Kupec,* 202 W.Va. at 569, 505 S.E.2d at 632 (emphasis added).

In this case, the evidence presented to the HPS supports a finding that Mr. Kupec was *negligent* in his handling of his firm's client trust account. The account was established in 1938 by Mr. Kupec's predecessors, long before Mr. Kupec became a member of the bar in 1976. When Mr. Kupec and his partners assumed control of the firm, they assumed control of the account, and appear to have simply operated the account contrary to the strictures of the *Rules of Professional Conduct.* Most client money was placed in the account, and expenses for clients' cases were withdrawn from the account, without regard for the safety of the client's assets.

The HPS recommended that Mr. Kupec be suspended from the practice of law for 60 days for his violation of Rule 8.4(c) and Rule 8.4(d). However, because Mr. Kupec was negligent in the management of his clients' funds, we reject the HPS's recommendation.

We believe that the ABA's recommended sanction (that "when the lawyer is merely negligent in dealing with entrusted funds, the ABA standards suggest reprimand or admonishment") is more appropriate in this case. *Kupec, supra.*

## IV.

We therefore hold that the respondent, Thomas Kupec, shall be admonished for his conduct in the administration of his client trust accounts, and thereby violating Rules 8.4(c) and 8.4(d) of the *Rules of Professional Conduct.* Furthermore, in accord with the recommendations of the HPS, we order that Mr. Kupec file with the ODC a summary outlining the manner in which his trust accounts have been established, monitored and audited. Mr. Kupec must also consent to a periodic audit by the ODC of any trust account maintained solely by him or jointly by him, and must secure an additional 6 hours of CLE credit in Ethics and Office Management. Lastly, all costs of these proceedings shall be assessed against Mr. Kupec.

Admonishment with Conditions.