689 S.E.2d 811

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Kenneth E. CHITTUM, Respondent.**

**No. 34733.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2010.

Decided Jan. 29, 2010.

---

Andrea J. Hinerman, Esq., Office of Disciplinary Counsel, Charleston, WV, Attorney for Complainant.

David L. White, Esq., The Masters Law Firm LC, Charleston, WV, Attorney for Respondent.

PER CURIAM:

This is a lawyer disciplinary proceeding brought against Kenneth E. Chittum (hereinafter "Mr. Chittum") by the Office of Disciplinary Counsel (hereinafter "the ODC") on behalf of the Lawyer Disciplinary Board (hereinafter "the Board"). A Hearing Panel Subcommittee of the Board determined that Mr. Chittum violated seven *Rules of Professional Conduct*. Consequently, the Hearing Panel Subcommittee recommended the following sanctions: (1) that Mr. Chittum be reprimanded; (2) that he sign and follow a plan of supervised practice for a period of two years with a supervising attorney; (3) that he complete an additional 9 hours of CLE during the 2009–2010 reporting period in the area of ethics and office management over and above that already required; (4) that he have a certified public accountant audit his office accounting records for two consecutive years; (5) that he deliver the personal items of a former client/complainant to a designated place within twenty days of the entry of the Order; and (6) that he pay

the costs incurred in this disciplinary proceeding.

Mr. Chittum does not contest the Board's finding that he committed seven violations of the *Rules of Professional Conduct*. He asks that this Court accept the Board's recommended sanctions as sufficient punishment for his transgressions. On September 3, 2009, we rejected the Board's recommended sanctions and ordered both parties to file briefs in this Court. Having reviewed the Board's recommended sanctions, the stipulated findings of fact, the briefs and arguments of counsel, and all other matters of record, we find that Mr. Chittum violated only four of the seven *Rules of Professional Conduct*. Nevertheless, we find that the Board's recommended sanctions, as moulded, are appropriate and are hereby imposed.

## I.

### Standard of Review

■ In *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court took the opportunity to "resolve any doubt as to the applicable standard of judicial review" in lawyer disciplinary cases. 192 W.Va. at 289, 452 S.E.2d at 380. Thus, Syllabus Point 3 of *McCorkle* holds:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgement. On the other hand, substantial deference is given to the Committee's

findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record. *See also,* Syllabus Point 1, *Lawyer Disciplinary Board v. Lakin,* 217 W.Va. 134, 617 S.E.2d 484 (2005); Syllabus Point 1, *Lawyer Disciplinary Board v. Lusk,* 212 W.Va. 456, 574 S.E.2d 788 (2002); Syllabus Point 3, *Lawyer Disciplinary Board v. Barber,* 211 W.Va. 358, 566 S.E.2d 245 (2002).

■ The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. Syllabus Point 3 of *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), holds: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *See also,* Syllabus Point 2, *Barber, supra;* Syllabus Point 3, *Lawyer Disciplinary Board v. Frame,* 198 W.Va. 166, 479 S.E.2d 676 (1996).

Rule 3.7 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See also Lusk, supra,* 212 W.Va. at 461, 574 S.E.2d at 793; Syllabus Point 2, *Lawyer Disciplinary Board v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15.[1]

## II.

### Factual Background, Charged Violations and Analysis

Mr. Chittum practices law[2] in Mercer County, Bluefield, West Virginia. On February 13, 2009, a two-count statement of ethical

---

**1.** Rule 3.15 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* ... (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

**2.** He was admitted to practice law in West Virginia on January 12, 1993.

violations was filed against Mr. Chittum. One count arose as the result of a complaint filed by a former client, the other complaint was filed by the ODC.

### 1. Count I—Complaint of Deborah L. Stevenson

Ms. Deborah L. Stevenson was incarcerated in a federal prison in Florida in June 2004 when her husband filed for divorce in Mercer County, West Virginia. The Family Court of Mercer County appointed Mr. Chittum to serve as Ms. Stevenson's *guardian ad litem* and represent her in the divorce proceeding. He was appointed pursuant to a *pro bono* program and received no fee or reimbursement of expenses. After receiving this appointment, Mr. Chittum initiated a flirtatious long distance telephone and letter writing relationship with Ms. Stevenson. However, Mr. Chittum and Ms. Stevenson never met each other in person.

The final hearing in the divorce proceeding occurred on September 16, 2004. The following day, September 17, 2004, Mr. Chittum sent Ms. Stevenson a letter detailing the final hearing and discussing how he could assist her with a petition for a federal *writ of habeas corpus* that she was planning to file *pro se*. Thereafter, Mr. Chittum continued sending Ms. Stevenson flirtatious handwritten letters. In one such letter, he discussed the possibility of getting Ms. Stevenson transferred to Alderson, West Virginia, noting that he could visit her there and raising the possibility of contact visits. Ultimately, Ms. Stevenson was transferred to Alderson without Mr. Chittum's assistance and he has not visited or communicated with her since the transfer occurred.[3]

Shortly after the final divorce order was entered, Ms. Stevenson's ex-husband delivered her personal belongings to Mr. Chittum's office. On October 26, 2004, Mr. Chittum sent Ms. Stevenson photographs of these personal belongings and discussed his efforts to assist her with the *writ of habeas corpus* petition. Thereafter, Mr. Chittum reviewed her *pro se writ of habeas corpus* petition in November 2004.

The personal correspondence between Mr. Chittum and Ms. Stevenson continued until March 2005. Approximately six months later, Ms. Stevenson filed her complaint against Mr. Chittum, on September 12, 2005, alleging that he stopped corresponding with her about her legal matters and stopped accepting her collect telephone calls from prison. The complaint also alleges that she made numerous requests that Mr. Chittum deliver her personal belongings to her grandmother and that he repeatedly failed to do so. Mr. Chittum made two attempts to deliver these items to Ms. Stevenson's grandmother who lived in Virginia. On both occasions, Mr. Chittum contacted Ms. Stevenson's grandmother and agreed upon a delivery time and date, and paid someone to load, haul and deliver the items to the grandmother's residence in Virginia. On both occasions, Ms. Stevenson's grandmother was not at home when the delivery arrived. It appears from the record that Ms. Stevenson's grandmother thereafter remarried and moved to Colorado. In August 2008, Mr. Chittum received a letter from an individual in Arizona requesting the items be sent there. Mr. Chittum could not verify whether Ms. Stevenson designated that individual to receive the personal items. To the contrary, in a January 20, 2009, letter to counsel for the Board, and in her deposition for this matter, Ms. Stevenson requests that the personal items be sent to an individual named Diane Lavore, who lives in Annandale, Virginia.

### A. Rule 1.3—Diligence

█ As a result of Mr. Chittum's failure to successfully deliver Ms. Stevenson's personal belongings to her grandmother in a timely manner, the Hearing Panel Subcommittee found that he violated Rule 1.3 of the *Rules of Professional Conduct*, which provides:

Rule 1.3 Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

Our review of the record does not support this conclusion. Mr. Chittum contacted Ms. Stevenson's grandmother, agreed on a time

---

3. Ms. Stevenson's prison term ends in 2016.

and date at which he could deliver the belongings and subsequently paid someone to load, haul and deliver the items to her residence in Virginia. Ms. Stevenson's grandmother was not at home when the delivery arrived. After this delivery failed, Mr. Chittum again contacted Ms. Stevenson's grandmother and again they agreed on a time and date at which she would accept delivery. Mr. Chittum again paid someone to load, haul and deliver the belongings to Virginia, and once again, Ms. Stevenson's grandmother was not at home at the agreed upon time. After this second delivery failed, Mr. Chittum kept the belongings in storage. Mr. Chittum left a voice mail message for Ms. Stevenson's grandmother after the second delivery failed, but did not receive a return phone call. The Hearing Panel Subcommittee determined Ms. Stevenson's grandmother remarried and moved sometime after these failed deliveries occurred. Based on the record before us, we do not find that Mr. Chittum's failure to successfully deliver Ms. Stevenson's personal belongings to her grandmother constitutes a violation of Rule 1.3.

### B. Rule 1.4(a)—Communication

■ The Hearing Panel Subcommittee found that Mr. Chittum's failure to respond to Ms. Stevenson and her grandmother's inquiries about her legal matters and personal belongings constituted a violation of Rule 1.4(a) of the *Rules of Professional Conduct,* which states:

Rule 1.4 Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Our review of the record indicates that Mr. Chittum did communicate with Ms. Stevenson's grandmother about the personal belongings and twice attempted to deliver these items at his own expense. Furthermore, Mr. Chittum communicated with Ms. Stevenson and kept her fully advised on the divorce proceedings. The divorce proceeding concluded in September 2004, and Mr. Chittum continued communicating with Ms. Stevenson through March 2005. Other than Mr. Chittum's retention of her personal belongings

following the conclusion of the matter, Ms. Stevenson was pleased with his handling of her divorce proceeding. Mr. Chittum agreed to advise Ms. Stevenson on her *pro se writ of habeas corpus* petition and did so. In a December 2, 2004, letter from Mr. Chittum to Ms. Stevenson, he states that he reviewed her petition and "have had another attorney in my office (read it) . . . and we believe it is all you can do." Mr. Chittum did not agree to represent Ms. Stevenson regarding her *writ of habeas corpus* petition.

Ms. Stevenson states that Mr. Chittum thereafter stopped corresponding with her and refused to accept her collect telephone calls from prison. At that time, Mr. Chittum no longer represented her. The *pro bono* appointment was only for the divorce proceeding and did not obligate Mr. Chittum to provide indefinite, unpaid legal assistance to Ms. Stevenson. We therefore do not find that Mr. Chittum violated Rule 1.4(a) of the *Rules of Professional Conduct.*

### C. Rule 8.4(a), 8.4(d), and 8.4(g)—Misconduct

■ The Hearing Panel Subcommittee also determined that Mr. Chittum's pursuit of a long distance personal relationship with a client in a vulnerable situation reflected adversely on his character and fitness to practice law. While there was no physical contact between the parties, the Board found that Mr. Chittum attempted to develop a sexual relationship with Ms. Stevenson which constituted a violation of Rules 8.4(a), 8.4(d) and 8.4(g) of the *Rules of Professional Conduct,* which provide:

Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .

(d) engage in conduct that is prejudicial to the administration of justice; . . .

(g) have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the

lawyer/client relationship. For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purposes of arousing or gratifying the sexual desire of either party or as a means of abuse.

Rule 8.4(g) of the *Rules of Professional Conduct* provides that it is professional misconduct to "have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship." Based on the plain language of Rule 8.4(g), we find that Mr. Chittum did not have "sexual relations" with Ms. Stevenson. Rule 8.4(g) defines "sexual relations" as:

> ... sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purposes of arousing or gratifying the sexual desire of either party or as a means of abuse.

Mr. Chittum and Ms. Stevenson never physically met each other. Their relationship existed solely through telephone calls and letters. Mr. Chittum never attempted to physically have sexual intercourse with Ms. Stevenson or touch her in any manner. Mr. Chittum's telephone calls and letters implied the possibility of having a romantic relationship with Ms. Stevenson at some future date. This conduct does not rise to the level of "sexual relations" as defined by Rule 8.4(g).

However, Mr. Chittum's flirtatious remarks were misconduct under Rule 8.4(a), because they were an attempt to establish a sexual relationship with his client. We condemn this conduct and find that Mr. Chittum's behavior was inappropriate and prejudicial to the administration of justice because

his client was incarcerated and in a vulnerable position. Under the circumstances, Ms. Stevenson might have felt obligated to respond to Mr. Chittum's flirtatious overtures to ensure that he would fully pursue her interests in the divorce proceeding. We therefore agree with the Board's finding that Mr. Chittum's behavior was also a violation of Rule 8.4(d) of the *Rules of Professional Conduct.*

### 2. Count II—Complaint of the Office of Disciplinary Counsel

 On October 19, 2003, Mr. Chittum's wife was involved in an automobile accident and received serious injuries. Both Mr. and Mrs. Chittum asserted a claim for damages as a result of this accident and obtained the assistance of an attorney, McGinnis E. Hatfield, to help process their claim. Following the accident, Mr. Chittum and his wife received a settlement in the amount of $200,000.00. On December 5, 2003, and December 19, 2003, two $100,000.00 settlement checks were deposited into Mr. Chittum's "Attorney at Law Trust Account" that he maintained at First Community Bank. Mr. Chittum had a second account at First Community Bank titled "Client Trust Account–IOLTA."[4] On December 9, 2003, Mr. Chittum paid McGinnis E. Hatfield $5000.00 for legal work performed on behalf of himself and his wife, and the $195,000.00 from the settlement remained in his "Attorney at Law Trust Account." From December 11, 2003, through December 30, 2003, Mr. Chittum issued a number of checks for household and office expenses from his "Attorney at Law Trust Account."[5] Mrs. Chittum ratified and confirmed all of the expenditures made from the settlement fund. In addition, Mr. Chittum deposited client funds into his "Attorney at Law Trust Account" rather than his "Client Trust Account–IOLTA."

On March 23, 2004, Mr. Chittum wrote and cashed a check made out to "Cash" in the

---

**4.** IOLTA is an acronym for Interest on Lawyer Trust Accounts. Lawyers are required to maintain a client trust account under Rule 1.15 of the *Rules of Professional Conduct.*

**5.** These checks were made out to various parties including: Krogers, Dish Network, First Com-

munity Bank (for payroll), Comcast, a client (for advance in settlement), child care service, Cellular One, cash, St. Lukes, and Bluefield Rescue Squad. A number of these checks went toward remodeling the Chittum home to make it wheelchair accessible.

amount of $150.00 from his "Client Trust Account–IOLTA." After this check cleared, he maintained a balance of $30.11 in his "Client Trust Account–IOLTA" until June 30, 2005, when he emptied the remaining funds from the IOLTA account.

The Hearing Panel Subcommittee determined that no client funds were misappropriated and restitution is not an issue in this matter. However, the Subcommittee found that by failing to properly maintain and administer a separate client trust account and by commingling his personal money with client funds, Mr. Chittum violated Rule 1.15(a) of the Rules of Professional Conduct, which states:

Rule 1.15 Safekeeping property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

The Subcommittee also found that by closing his "Client Trust Account–IOLTA", Mr. Chittum failed to maintain an IOLTA account, thereby violating Rule 1.15(d) of the *Rules of Professional Conduct*, which provides:

Rule 1.15 Safekeeping property

(d) IOLTA (Interest on Lawyers Trust Accounts). A lawyer who receives client funds that are nominal in amount or are expected to be held for a brief period shall establish and maintain a pooled, interest or dividend-bearing, account for the deposit of such funds, at an eligible financial institution which carries federal deposit insurance, in compliance with the following provisions:

(1) The account shall include only such client funds that are nominal in amount or are expected to be held for a brief period of time such that the funds cannot earn income for the client in excess of the costs of securing that income. In determining whether a client's funds can earn income in excess of costs, the lawyer or law firm shall consider the following factors:

(i) The amount of funds to be deposited;

(ii) The expected duration of the deposit, including the likelihood of delay in the matter for which the funds are held;

(iii) The rates of interest or yield at financial institutions where the funds are to be deposited;

(iv) The cost of establishing and administering non-IOLTA accounts for the client's benefit, including service charges, the costs of the lawyer's services, and the costs of preparing any tax reports required for income accruing to the client's benefit;

(v) The capability of financial institutions, lawyers or law firms to calculate and pay income to individual clients;

(vi) Any other circumstances that affect the ability of the client's funds to earn a net return for the client.

(2) The lawyer shall review the account at reasonable intervals to determine whether the circumstances warrant further action with respect to the funds of any client.

(3) Lawyers may only establish and maintain an IOLTA Trust Account at an eligible financial institution.[6]

Our review of the record confirms the Board's finding that Mr. Chittum violated rules 1.15(a) and 1.15(d). Mr. Chittum had an "Attorney at Law Trust Account" that he deposited personal funds into, including the $200,000.00 settlement that he and his wife received following her automobile accident.

---

6. Rule 1.15(d)(3) and (4) goes on to give a detailed statement on the requirements a financial institution must meet to participate in the IOLTA program. Rule 1.15(d)(5) instructs attorneys on how to direct depository institutions regarding their IOLTA account. Rule 1.15(d)(6) sets forth attorneys who may be exempt from the program.

Mr. Chittum used his "Attorney at Law Trust Account" to pay personal expenses. While Mr. Chittum maintained a separate IOLTA account, which he used for some client funds, the bank records show he also deposited client funds into his "Attorney at Law Trust Account." This commingling of personal and client funds is a clear violation of Rule 1.15(a) of the *Rules of Professional Conduct.*

The record also shows that Mr. Chittum emptied the funds from his IOLTA account on June 30, 2005. This failure to maintain a proper IOLTA client trust account is a violation of Rule 1.15(d) of the *Rules of Professional Conduct.*

### 3. Sanctions

 Having determined that Mr. Chittum violated four *Rules of Professional Conduct,* we now examine whether the recommended sanctions are appropriate. The Board and Mr. Chittum maintain that the Hearing Panel Subcommittee's recommended sanctions are reasonable and achieve the primary purpose of the disciplinary system which this Court has previously set forth:

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).[7]

 In assessing the recommended sanctions, we note that this Court has previously recognized,

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998).

The Hearing Panel Subcommittee properly found that Mr. Chittum violated duties to his client, to the public, to the legal system, and to the profession. He violated his duty to his client, to the public and to the profession by initiating and pursuing a personal relationship with a client who was incarcerated and in a vulnerable position. Mr. Chittum's failure to maintain his IOLTA account and commingling client funds with personal funds are violations of duties owed to his clients and to the legal profession.

The second factor under Rule 3.16 is whether the lawyer acted intentionally, knowingly, or negligently. The Hearing Panel Subcommittee found that Mr. Chittum's violations regarding his flirtatious overtures toward Ms. Stevenson were negligent. Additionally, the Board found that Mr. Chittum was negligent when he failed to deposit client funds into his IOLTA account and commingled his personal funds and client funds in his "Attorney at Law Trust Account." This Court has previously stated that "the penalty for a misappropriation offense must be consistent with the level of intent by the lawyer and the level of the injury." *Lawyer Disciplinary Board v. Kupec,* 204 W.Va. 643, 515 S.E.2d 600 (1999). The Court in *Kupec* adopted the standards

---

7. "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics v. Keenan,* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord Lawyer Disciplinary Bd. v. Sims,* 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002) (per curiam) (Davis, J., concurring, in part, and dissenting, in part).

proffered by the *American Bar Association* to assess such offenses, stating:

> The American Bar Association Model Standards for Imposing Lawyer Sanctions (hereinafter "ABA standards") classify misappropriation offenses according to the level of intent and the level of the injury. The ABA standards are consistent with the general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds. Where there is little or no actual or potential injury to the owner of entrusted funds, and when the lawyer knows or should know he/she is dealing improperly with entrusted funds, the ABA standards suggest suspension. When the lawyer is merely *negligent* in dealing with entrusted funds, the ABA standards suggest reprimand or admonishment.

*Kupec,* 204 W.Va. at 648–649, 515 S.E.2d at 605–606.

Since we must give the Board's findings of fact substantial deference, we cannot say that their finding of negligence was clearly wrong. We note that the Hearing Panel Subcommittee found that there was no actual injury to any client or to Mrs. Chittum with regard to Mr. Chittum's commingled funds and failure to maintain a proper IOLTA account. In addition, there was no intent to convert the clients' entrusted funds for his own use. Therefore the recommendation that Mr. Chittum be issued a reprimand, rather than a suspension, is supported by the ABA standards and our prior case law.

The third factor under Rule 3.16 is the amount of actual or potential injury caused by the lawyer's misconduct. As previously discussed, the Subcommittee found that Mr. Chittum's conduct did not cause actual injury. The record before us supports this finding.

The final consideration under Rule 3.16 is the existence of any aggravating or mitigating factors. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003). The Hearing Panel Subcommittee found the existence of three aggravating factors: (1) experience in the practice of law; (2) selfish motive; and (3) vulnerability of the victim. We note that Mr. Chittum had been engaged in the practice of law for over ten years at the time the violations in this matter occurred. We also note that Mr. Chittum violated four *Rules of Professional Conduct* and though not included as an aggravating factor by the Subcommittee, this Court in *Scott* "recognized 'multiple offenses' as an aggravating factor in a lawyer disciplinary proceeding." *Scott,* 213 W.Va. at 217, 579 S.E.2d at 558.

The Subcommittee also determined that three mitigating factors weigh in Mr. Chittum's favor. We have previously held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Scott, supra.* In *Scott,* we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syllabus Point 3, *Scott, supra.*

The three mitigating factors the Subcommittee found in this case are: (1) full and free disclosure to the ODC and cooperative attitude toward proceedings; (2) good faith effort to rectify consequences of misconduct; and (3) remorse.

When weighing the four factors set forth in Rule 3.16, we believe the sanctions recommended by the Board are proper and accom-

plish the three main goals of our disciplinary proceedings by punishing Mr. Chittum, serving as a deterrent to other members of the bar and restoring public confidence in the ethical standards of our profession. Had the Hearing Panel Subcommittee determined that Mr. Chittum caused actual injury either to Ms. Stevenson or to any client in relation to his failure to maintain a proper IOLTA account and commingling of client and personal funds, harsher sanctions would have been appropriate.

## III.

### Conclusion

For the foregoing reasons, we adopt the recommendations, as moulded, set forth by the Board and impose the following sanctions: (1) that Mr. Chittum be reprimanded pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure; (2) that Mr. Chittum sign and follow a plan of supervised practice for a period of two years with a supervising attorney, consistent with the specifications set forth by the ODC; (3) that Mr. Chittum complete an additional 9 hours of CLE by July 1, 2011, in the area of ethics and office management over and above that already required; (4) that Mr. Chittum have a certified public accountant audit his office accounting records for two consecutive years, consistent with the specifications set forth by the ODC; (5) that Mr. Chittum deliver, at his own expense, Ms. Stevenson's personal items to a place designated by the ODC within thirty days of receiving notification from the ODC [8]; and (6) that Mr. Chittum pay the costs incurred in this disciplinary proceeding.

Public Reprimand and Other Sanctions.

---

8. The Board's recommendation that Mr. Chittum deliver Ms. Stevenson's personal belongings to a designated place did not state who would determine the whereabouts of the delivery location. Obviously, we can not allow Ms. Stevenson to unilaterally designate the place of delivery. It would be unfair to require Ms. Stevenson's unpaid lawyer to deliver these belongings over long distances or incur unreasonable expenses. The ODC must reach an accord with Ms. Stevenson as to a reasonable place for Mr. Chittum to deliver her personal belongings.