WALKER, Justice:
The Hearing Panel Subcommittee (HPS) of the Lawyer Disciplinary Board (LDB) found that Respondent Sarah Campbell violated two provisions of the West Virginia Rules of Professional Conduct and recommended that she be admonished and ordered to pay the costs of these proceedings. Ms. Campbell does not challenge the recommendations of the HPS; however, the Office of Disciplinary Counsel (ODC) of the LDB objected to the sanctions. This matter comes before this Court upon the objections of the ODC.
Based upon the parties' stipulations, the ODC asserts that the appropriate sanction is a suspension of Ms. Campbell's license to practice law for sixty days with automatic reinstatement, six months of supervised practice following her suspension, and that she be required to pay the costs of these proceedings.
In order to resolve this case, we must consider whether a sexual relationship between an attorney and her client predates the attorney-client relationship. Given the long history of the relationship in this case, we find that it does.
Even so, this Court finds that there is clear and convincing evidence[1] to support the findings of the HPS that Ms. Campbell violated Rules 4.1 and 8.4(c) of the Rules of Professional Conduct because she misrepresented to her supervisor the nature of her relationship with a client. For the reasons explained below, we adopt the sanctions recommended by the HPS.
I. FACTUAL AND PROCEDURAL BACKGROUND
Ms. Campbell is a lawyer practicing in Summersville, West Virginia who was admitted to the West Virginia State Bar on October 24, 2013. This proceeding arises from the July 30, 2014 complaint filed by Samuel R. White, Nicholas County Assistant Prosecutor, pursuant to his mandatory reporting obligations under Rule 8.3 of the Rules of Professional Conduct.[2]
A. Underlying Facts and Allegations
In 2002, Ms. Campbell and Mr. H began a romantic relationship; at the time, she was fourteen and he was sixteen years old.[3] In 2003, this relationship became sexual and continued intermittently until December 2013, when both parties decided to pursue other romantic partners.
*821 In October 2013, Ms. Campbell was admitted to practice law in West Virginia and began working for the Nicholas County Public Defender's Office. In April 2014, having practiced law for only six months, Ms. Campbell was appointed to represent Mr. H. in an abuse and neglect proceeding.[4] Shortly thereafter, Mr. H. was arrested on felony charges stemming from the abuse and neglect proceeding and Ms. Campbell was again appointed to represent him.
That same month, due to the nature of their relationship and fully complying with her obligations under Rule 1.7(b), Ms. Campbell initiated a discussion with Mr. H. about her continued representation.[5] Mr. H. verbally waived the conflict and asked Ms. Campbell to continue representation, adding that he believed it would "lead to more zealous representation."[6]
In September 2014, Mr. H. told Ms. Campbell he was in love with her and asked her to restart the relationship. At that time, Ms. Campbell advised Mr. H. that they should speak with her supervisor, Chief Public Defender Cynthia Stanton, to make her aware of the preexisting sexual relationship. Mr. H. insisted on seeing Ms. Stanton alone and Ms. Campbell obliged.
During this private meeting, Mr. H. told Ms. Stanton that he was in love with Ms. Campbell, but failed to disclose the prior relationship or that Ms. Campbell had feelings for him as well. As a result, Ms. Stanton believed that Mr. H. was merely asking for permission to date Ms. Campbell. At the same time, Mr. H. led Ms. Campbell to believe that he told Ms. Stanton everything about the preexisting relationship and that she was fine with its continuance.[7] During this meeting, Ms. Stanton did not question Ms. Campbell about the relationship and Ms. Campbell did not inquire as to the extent of Ms. Stanton's knowledge of it. Still operating on inaccurate information, Ms. Stanton advised Ms. Campbell that she did not believe a judge would grant a motion to withdraw from representation of Mr. H. and that she believed continued representation would be appropriate.
Ms. Campbell met again with Mr. H. and indicated for a second time that he could request new counsel, but informed him that she did not have a problem moving forward with representation. Shortly thereafter, Ms. Campbell and Mr. H. resumed sexual relations. From roughly October 2014 until May 2015 (when Mr. H. was indicted), aside from appointments related to his case, Ms. Campbell saw Mr. H. socially a maximum of five or six times.
In July 2015, Assistant Prosecutor White received information from Trooper Daniel White concerning a possible relationship between Ms. Campbell and Mr. H. Trooper White obtained this information during a home confinement check performed at Mr. H.'s residence. Trooper White confronted Mr. H. regarding the allegation that he was dating Ms. Campbell. Upon requesting Mr. H.'s phone, Trooper White observed "no less than seven (7) photographs" of Ms. Campbell, *822 including "one that appeared to be [Ms. Campbell] in lingerie" on the phone. During this encounter, Mr. H. told Trooper White he was in love with Ms. Campbell and was actively seeking other representation for his criminal proceedings. During the home confinement check, which resulted in a finding of no violations by Mr. H., Trooper White also met with the owner of the home, Mr. H.'s aunt, Alma Varner. Ms. Varner provided a written statement that Mr. H. was dating Ms. Campbell.
Prior to filing his complaint with the ODC, Assistant Prosecutor White advised Ms. Stanton of the allegations. Ms. Stanton contacted Ms. Campbell by telephone and asked if the allegations were true, alerting her that her job depended on the response. Ms. Campbell denied having a sexual relationship with Mr. H. Immediately thereafter, Ms. Campbell filed a motion to withdraw as Mr. H.'s counsel and Assistant Prosecutor White filed the disciplinary complaint against Ms. Campbell. Mr. H.'s new counsel made a notice of appearance in the case that same week. Based upon Ms. Campbell's denial of the allegations, Ms. Stanton advised the Public Defender's Corporation board members and the Circuit Court of Nicholas County that the allegations were unfounded.
In August 2015, ODC sent Ms. Campbell a letter with the complaint. Ms. Campbell filed a three-sentence affidavit in which she stated her name and that she was an assistant public defender in Nicholas County and denied violating the Rules of Professional Conduct. Ultimately, in December 2015, Mr. H. pled guilty to two counts of the misdemeanor offense of Sexual Abuse in the 3rd Degree and registered with the Sex Offender Registry. At this time, the sexual relationship between Mr. H. and Ms. Campbell ended by mutual agreement.[8]
On April 21, 2016, Ms. Campbell called Ms. Stanton to inform her she had lied about not having sexual relations with Mr. H. when directly asked in July 2015. The following day, Ms. Campbell appeared for a sworn statement at ODC pursuant to a subpoena duces tecum and testified that her relationship with Mr. H. predated her representation of him and that despite not believing there was a conflict, she nonetheless advised him of it and obtained his consent. Ms. Campbell admitted that Ms. Stanton informed her of Mr. H.'s desire to have a relationship with her and that Ms. Stanton told her not to pursue a relationship until the attorney-client relationship concluded, but that she resumed the relationship anyway in October 2014. Ms. Campbell admitted that she sent photographs to Mr. H. via her smart phone on several occasions, but denied that she was wearing lingerie in any of them.
A few days later, the ODC received a letter from Ms. Stanton indicating that neither Ms. Campbell nor Mr. H. had advised her of their sexual relationship until Ms. Campbell telephoned her the evening of April 21, 2016. In the letter, Ms. Stanton stated that, had she known, she would have advised Ms. Campbell appropriately.
In a May 2016 sworn statement, Ms. Campbell addressed the misrepresentations made to Ms. Stanton and denied violating the Rules of Professional Conduct, stating that the relationship began when the two were in junior high school and continued intermittently until 2013, when it dissipated but did not end.
B. Charges by the Lawyer Disciplinary Board
The LDB filed a formal Statement of Charges on November 2, 2016, alleging that Ms. Campbell violated Rules 1.7(b) (conflict of interest),[9] Rule 1.8(j) (conflict of interest *823 /prohibition on sexual relations with a client),[10] Rule 8.4(d) (misconduct),[11] and Rule 8.1(a) (false statements of material fact).[12]
The ODC and Ms. Campbell reached an agreement to resolve the matter under the following terms: (1) that Ms. Campbell's law license be suspended for 60 days; (2) that upon her suspension, she must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure; (3) that she be subject to automatic reinstatement of her law license; (4) that upon reinstatement of her law license, she would be subject to six months of probation with supervised practice; and (5) that she be ordered to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.
C. Report of the Hearing Panel Subcommittee
Following a hearing on March 2, 2017, the HPS filed a report with this Court on June 12, 2017. Providing a detailed analysis of the testimony and other evidence presented at the hearing, the HPS found that the evidence did not establish that Ms. Campbell violated any of the Rules of Professional Conduct asserted by the LDB, but did find violations of Rules 4.1 (truthfulness in statements to others) and 8.4(c) (misconduct generally).[13] The HPS evaluated Ms. Campbell's conduct in accordance with applicable standards to determine whether discipline should be imposed, including mitigating and aggravating factors, and concluded that she should be sanctioned with an admonishment and with payment of the costs of these proceedings.
The HPS concluded that Ms. Campbell violated Rule 4.1 by denying the existence of a past or current sexual relationship with her client. It also concluded that Rule 8.4 was violated because she failed to inform her employer of the relationship, she further denied the existence of the relationship, and she engaged in a sexual relationship with her client when she knew that such conduct violated her employer's prohibitions.
However, as previously stated, the HPS concluded that Ms. Campbell did not violate any of the rules alleged by the LDB. The HPS found no violation of Rule 1.7, deeming it sufficient that Ms. Campbell had consulted with Mr. H. and obtained his consent for the representation, and because there was no evidence that Ms. Campbell's representation of Mr. H. was materially limited by her personal interest. The HPS further concluded that Ms. Campbell did not violate Rule 1.8(j), because a consensual sexual relationship had existed for more than ten years at the commencement of the representation. The HPS also concluded that Ms. Campbell did not violate Rule 8.1(a) because, for the reasons stated above, she believed that her client had informed Ms. Stanton of the relationship, and therefore she had not made a false statement. Finally, the HPS concluded that Ms. Campbell did not violate Rule 8.4(d) after finding that the relationship itself was not prohibited.
*824 As for the imposition of an appropriate sanction, the HPS concluded that Ms. Campbell violated two rules, both stemming from misrepresentations made to her supervisor and her actions following those misrepresentations, and further concluded that there were no aggravating factors. Rather, the HPS concluded that there were seven mitigating factors: (1) Ms. Campbell had no prior disciplinary record; (2) Ms. Campbell, licensed in 2013, had little to no experience in the practice of law; (3) Ms. Campbell expressed true remorse at her disciplinary proceedings; (4) Ms. Campbell's supervisor, the one person most affected by the rules violation, believes that a sanction of suspension is too harsh;[14] (5) the disciplinary proceeding itself has made Ms. Campbell endure humiliating and embarrassing situations with judges and others in her small legal community, and such conditions are likely to follow her for years to come; (6) given its heavy caseload and limited staff, the public defender's office where Ms. Campbell works, and the public more generally, would suffer unnecessary hardship if a sanction of suspension was imposed; and (7) there are no victims in this case and no one was harmed by Ms. Campbell's conduct.
In addition to the mitigating factors listed above, the HPS was particularly troubled by the fact that the disciplinary complaint was filed by opposing counsel in ongoing litigation. This fact is even more pronounced considering the investigation of the relationship ensued within 24 hours of Ms. Campbell having refused to grant a continuance to accommodate the complainant-the prosecutor-in the case against Mr. H.
Although Ms. Campbell agreed with the HPS's recommended disposition, the ODC filed an objection on the grounds that the sanctions were not sufficiently harsh. Instead, the ODC recommends that we impose the sanctions contemplated in its agreement with Ms. Campbell. Although Ms. Campbell has agreed to the sanctions recommended by the ODC and has also agreed to the sanctions recommended by the HPS, by virtue of the fact that the ODC and HPS disagree, this Court must determine the appropriate sanction to address the severity of the violations of the Rules of Professional Conduct.[15]
II. STANDARD OF REVIEW
We review lawyer disciplinary proceedings using the following standards:
A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.[16]
While we respectfully consider the HPS's recommendations on the sanction, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions, or annulments of attorneys' licenses to practice law."[17] We are mindful of our obligation to weigh the multiple considerations in these cases:
*825 In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.[18]
Keeping these standards in mind, we proceed to consider the arguments before the Court.
III. DISCUSSION
The ODC urges this Court to impose a harsher sanction than admonishment and payment of costs in this lawyer disciplinary matter and argues that the HPS erred in its application of Rule 1.8(j)/8.4(g) by finding that a dormant sexual relationship is a preexisting sexual relationship under that rule. Additionally, according to the ODC, the fact that Ms. Campbell stipulated to rule violations relieved it of its burden of proving the violations by clear and convincing evidence. Ms. Campbell consented to the sanction of admonishment and costs recommended by the HPS.
Our inquiry begins with the text of Rule 1.8(j), which states "[a] lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship." (Emphasis added). Thus, we must consider whether the sexual relationship between Ms. Campbell and Mr. H. predated their lawyer/client relationship. Given the unique and longstanding nature of the relationship, we agree with the HPS's finding that the relationship remained in existence at the time representation commenced, and, as such, falls within the exception expressly provided in Rule 1.8(j).
In these cases, we remain mindful of our obligation to consider facts on a case-by-case basis in determining appropriate sanctions:
In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.[19]
When considering the facts underlying this proceeding, it is readily apparent that the longstanding nature of the relationship between Ms. Campbell and Mr. H. is sufficient to fall within the exception of Rule 1.8(j). This relationship is one that dates back to junior high school in 2002 and continued intermittently for over a decade. The relationship dissipated in December 2013 before beginning again in October 2014. The only thing that distinguishes this "break" in the relationship from the many others before it is the commencement of the attorney-client relationship in April 2014 when Ms. Campbell was appointed to represent Mr. H. in a criminal matter. We find the HPS's discussion persuasive:
The continuation of the relationship at the commencement of, during and even after the representation was entirely consistent with the history of their relationship up to that time. It was sporadic and intermittent. To say that their relationship ended in December of 2013 and started anew in October of 2014, the position advocated by Disciplinary Counsel, simply goes against the grain of human nature and experience. We are not looking at a prior brief encounter where the parties were not invested with emotional bonds. We are looking at a ten-year, plus, relationship.
*826 Further, as the comments to the rule make clear, "[s]exual relationships that predate the client-lawyer relationship are not prohibited. Issues relating to the exploitation of the fiduciary relationship and client dependency are diminished when the sexual relationship existed prior to the commencement of the client-lawyer relationship."[20] Not only does the evidence fail to support a finding that Ms. Campbell took advantage of Mr. H., but the type of longstanding relationship between the two simply does not present the same concerns associated with new relationships that truly begin after representation begins. For these reasons, we conclude that for purposes of Rule 1.8(j), a longstanding and continuous, albeit intermittent sexual relationship, though dormant at the commencement of an attorney-client relationship, is a preexisting relationship.
Having determined that Ms. Campbell did not violate Rule 1.8(j), we next consider the ODC's remaining challenges to the HPS's determinations and recommended sanctions. In doing so, we rely upon our holding in Office of Disciplinary Counsel v. Jordan :
Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."[21]
In applying the first Jordan factor, the HPS found that Ms. Campbell violated her duty owed to the public and the legal system by providing false statements to Ms. Stanton, her supervising attorney. The HPS further stated that these false statements "reflect negatively on her personal integrity and are a violation of both her duty to the public and the legal system." The HPS found that Ms. Campbell violated the second Jordan factor, as well, by intentionally and knowingly lying to her supervisor about the ongoing relationship with Mr. H. Regarding the third Jordan factor, the HPS found no actual or potential injury caused by Ms. Campbell's conduct.
With regard to the fourth Jordan factor, we have explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."[22] We consistently have described mitigating factors as follows:
Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment ; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.[23]
In contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."[24]
In this case, the HPS found seven mitigating factors: (1) no prior disciplinary record; (2) Ms. Campbell has only been licensed *827 since 2013 with little experience in the practice of law; (3) Ms. Campbell expressed true remorse for her conduct at her disciplinary hearing; (4) Ms. Campbell's supervisor and the one most directly affected by the Rules violation believes that the sanction of suspension is too harsh; (5) as a result of this disciplinary action, Ms. Campbell has endured humiliating and personally embarrassing situations with her judge and others within the legal community; (6) imposing a sanction of suspension will create an unnecessary hardship on the public and public defender's office; and (7) there are no victims in this case and no one was harmed by Ms. Campbell's conduct.
With regard to aggravating factors, the ODC argues that four are present: (1) Ms. Campbell engaged in multiple violations of the Rules of Professional Conduct; (2) Ms. Campbell made false statements during the disciplinary process to her supervising attorney and to ODC: (3) Ms. Campbell's conduct was born of a selfish motive, to wit, engaging in a relationship with a client for her own sexual gratification; and (4) although there is no evidence of coercion or duress, based upon the inherent unequal power between a lawyer and a client, the vulnerability of a criminal defendant facing up to 70 years in prison is heightened.
We agree with the HPS that there are no aggravating factors present in this case and decline to adopt those argued by the ODC. First, having already determined that Ms. Campbell did not violate Rule 1.8(j), she is left with two rule violations, both stemming from misrepresentations made to her supervisor, not multiple rule violations for multiple instances of misconduct as the ODC asserts. Second, Ms. Campbell did not knowingly make a false statement to ODC as she believed the statement to be true when made and took steps to correct the record when she realized it was false. Third, whether or not Ms. Campbell's sexual relationship with Mr. H. was born of a selfish motive, it was not prohibited by Rule 1.8(j) and the motivation is therefore irrelevant.
The HPS's recommended sanctions are consistent with our precedent. In Lawyer Disciplinary Board v. Artimez, a lawyer violated Rule 8.4(d) by contracting with his client to obtain a release from all possible claims for professional misconduct and violated Rule 1.7(b) by having a sexual relationship with his client's wife.[25] As a result, the lawyer was publicly reprimanded, not suspended.[26] Similarly, in Lawyer Disciplinary Board v. Chittum, a lawyer violated seven rules, one of which involved an attempt to begin a sexual relationship with an incarcerated client in violation of Rule 8.4(a) and 8.4(d). As a result, he too was publicly reprimanded and not suspended.[27] Further, in Lawyer Disciplinary Board v. Hussell, where a lawyer was charged with engaging in a prohibited sexual relationship with a client, his case resulted in a complete dismissal despite an agreement with the ODC to a 90-day suspension and other sanctions.[28]
Additionally, HPS very clearly summarized the appropriateness of the sanctions we adopt today:
It is clear that Respondent was well aware of Rule 8.4(g) and Rule 1.8(j) and honestly and understandably believed that her conduct was exempted by the Rule. Such an interpretation was reasonable and rational. We believe she read the Rules accurately and correctly and, insofar as her dealings with her client were concerned, acted ethically and responsibly. The same cannot be said with respect to her dealings with her supervisor but, given the circumstances attendant to when she lied to her supervisor and the representations made by her supervisor and others, [we] believe that her transgressions in this regard, for the most part, are better dealt with by her supervisor and her employer, working with Respondent.
Taking into account the unique circumstances of this case, as well as the mitigating and aggravating factors present, we agree with HPS's recommendation that Ms. Campbell *828 be admonished and forced to pay the costs of this proceeding.
IV. CONCLUSION
Based upon the foregoing, we adopt the HPS's recommendations and impose the following sanctions pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure: (1) Admonishment of Ms. Campbell; and (2) order that Ms. Campbell reimburse the Lawyer Disciplinary Board the costs of the proceedings on the formal statement of charges.
Admonishment and Costs.
CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

Rule 3.7 of the Rules of Lawyer Disciplinary Procedure provides "[i]n order to recommend the imposition of the discipline of any lawyer, the allegations of the formal charge must be proved by clear and convincing evidence."

Rule 8.3(a) provides, "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

Because the nature of the crime for which Ms. Campbell represented Mr. H involves children and sensitive matters, we refer to him by the first initial of his surname. See W. Va. R. App. P. 40(e) ; State v. Edward Charles L., 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

Although Mr. H.'s conduct was egregious, the nature of the crime for which Ms. Campbell represented him is irrelevant to our analysis of whether she violated the Rules of Professional Conduct.

Rule 1.7(b) provides, in pertinent part, "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation."

Though Ms. Campbell did not obtain a written conflicts informed consent disclosure as required by the present version of Rule 1.7(b), this was not required under the previous version of Rule 1.7(b), in effect at the time of the discussion between Ms. Campbell and Mr. H.

In a letter dated May 2, 2016, Ms. Campbell informed the Chief Disciplinary Counsel of these events and also provided her with Mr. H.'s affidavit admitting his dishonesty in speaking with Ms. Stanton and later with Ms. Campbell. During the disciplinary hearing, Mr. H. stated:
I went in to see Cindy. I told-you know, that-we had a sexual relationship. I was in love with her and we had-we had a sexual relationship for years and it was a lie. I lied to her. I just-you know, I wanted to keep-I didn't see any reason why I couldn't have sex with her and I didn't want to stop, so I didn't want her mad at me for not telling-or for not telling Ms. Stanton.

In her sworn statement, Ms. Campbell explained that since she was new to the practice of law, she did not feel it would be prudent to have a romantic relationship with a registered sex offender while "building a career and reputation."

Because the subject conduct occurred prior to January 1, 2015, the version of the Rules of Professional Conduct in effect prior to the January 1, 2015 amendments applies. The applicable version of Rule 1.7(b) provided, "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests...." All references in this opinion to Rule 1.7(b) are made to the pre-January 1, 2015 version of the rule.

Rule 1.8(j) provides:
[a] lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship. For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of the lawyer for the purposes of arousing or gratifying the sexual desire of either party or as a means of abuse.

Rule 8.4(d) provides, "[i]t is professional misconduct for a lawyer to: ... engage in conduct that is prejudicial to the administration of justice."

Rule 8.1(a) provides, "[a]n application for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: ... knowingly make a false statement of material fact."

Rule 4.1 provides, "[i]n the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."
Rule 8.4(c) provides, "[i]t is professional misconduct for a lawyer to: engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

After being made aware of the proposed 60-day suspension, Ms. Stanton testified that she would recommend to the Public Defender Corporation that Ms. Campbell be able to continue her employment after her suspension and that she believed Ms. Campbell continued to zealously represent clients.

This Court is not bound by the agreement between Ms. Campbell and the ODC, nor is it bound by the HPS recommendations to which she consented. Rule 3.12 of the Rules of Lawyer Disciplinary Procedure states:
[i]f the Court does not concur with the recommended disposition, the Clerk of the Supreme Court of Appeals shall promptly establish a briefing schedule and notify the parties of the date and time of oral argument or submission of the case without oral argument before the Supreme Court of Appeals.

Syl. Pt. 3, Comm. on Legal Ethics v. McCorkle, 192 W. Va. 286, 452 S.E.2d 377 (1994).

Syl. Pt. 3, Comm. on Legal Ethics v. Blair, 174 W. Va. 494, 327 S.E.2d 671 (1984).

Syl. Pt. 3, Comm. on Legal Ethics v. Walker, 178 W. Va. 150, 358 S.E.2d 234 (1987).

Syl. Pt. 2, Comm. on Legal Ethics of the West Virginia State Bar v. Mullins, 159 W. Va. 647, 226 S.E.2d 427 (1976), overruled on other grounds by Comm. on Legal Ethics v. Cometti, 189 W. Va. 262, 430 S.E.2d 320 (1993).

Rules of Professional Conduct, 1.8(j), Comment 23.

Syl. Pt. 4, Office of Disciplinary Counsel v. Jordan, 204 W. Va. 495, 513 S.E.2d 722 (1998).

Syl. Pt. 2, Lawyer Disciplinary Bd. v. Scott, 213 W. Va. 209, 579 S.E.2d 550 (2003).

Id., Syl. Pt. 3.

Id., Syl. Pt. 4.

208 W. Va. 288, 540 S.E.2d 156 (2000).

Id.

225 W. Va. 83, 689 S.E.2d 811 (2010).

234 W. Va. 544, 767 S.E.2d 11 (2014).